**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re: Case No. 12-32686-JKO

NICA HOLDINGS, INC., Chapter 7

Debtor.

______________________________________/

**OPPOSED MOTION TO WITHDRAW REFERENCE**

Creditor Clarisse Ullrich, as the Personal Representative of the Estate of Peter Ullrich, pursuant to 28 U.S. Code § 157(d) and Bankruptcy Local Rule 5011-1, moves to withdraw reference to the United States Bankruptcy Court of remand proceedings, if any, from the bankruptcy appeal currently before the U.S. District Court [Case No. 16-CV-61168-MGC], and in support thereof, states:

1. This bankruptcy case was originally filed, without authority of any kind, by Ken Welt, who was neither an officer, a director, nor even a shareholder of Nica Holdings, Inc. ("Nica"). *See* ECF No. 24-1.

2. In 2007, Nica entered into an assignment for the benefit of creditors (the "ABC") pursuant to Chapter 727 of the Florida Statutes. *See* ECF No. 9-1. The Assignee was Kenneth Welt ("Welt"). *Id.* Only Nica's assets were assigned to Welt for liquidation—not the corporation itself. *Id.*

3. As explained below, Welt utterly failed to discharge his duties as an Assignee and caused immeasurable damage to the Assignment Estate through gross negligence and dishonesty. *See* ECF Nos. 9-3 and 9-5. Ultimately, Welt abandoned all of the assets of Nica and the sole remaining issues in the ABC case were claims against Welt himself and his lawyers. *See* ECF No. 95.

4. Facing Motions to Remove Assignee for Cause and for Leave to Sue the Assignee in the ABC Court, on September 24, 2012, Welt, in his capacity as Assignee, filed a voluntary Chapter 7 petition for bankruptcy on behalf of *the assignor*, Nica. *See* ECF Nos. 9 at pp. 1-4, 9-7, and 9-8.

5. Ullrich immediately challenged Welt's authority and the jurisdiction of the Bankruptcy Court. *See* ECF Nos. 9, 10, 61, and 62. Welt led the Bankruptcy Court to error. Using the tools of the bankruptcy process, the Trustee stripped Ullrich of his claim for millions of dollars in damages and then settled Ullrich's claims for a mere $50,000.00. *See* ECF No. 94. After years of litigation in the Bankruptcy Court, Ullrich was finally able to appeal to the Eleventh Circuit Court of Appeals which found that Welt had no basis in law or fact to file the bankruptcy case. *Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781, 788-791 (11th Cir. 2015).

6. Upon remand, Ullrich asked the Bankruptcy Court to void the orders previously entered approving the settlements and direct the Chapter 7 Trustee to return the settlement payments held in the Bankruptcy Estate to the settling parties, Welt and Squire Sanders, so that the parties to the unauthorized bankruptcy could be returned to their pre-bankruptcy positions. *See* ECF Nos. 185 and 196. Welt and Squire Sanders strongly opposed any corrective action by the Bankruptcy Court—including the reversal of the settlements approved by the Bankruptcy Court without jurisdiction.[1] *See* ECF Nos. 191, 193, and 194. Both Welt and Squire Sanders in fact argued that the settlements were still valid. *See* ECF Nos. 191, 193, and 194.

7. The Bankruptcy Court did not respond in a manner consistent with the Eleventh Circuit Decision and instead denied all of the relief requested and merely dismissed the bankruptcy

---

[1] Ullrich's claims against Welt in the state courts cannot proceed unless the settlements reached during the unauthorized bankruptcy are reversed and the parties are restored to the *status quo ante*.

case saying that is all the Court of Appeals required of him. A copy of the transcript of the May 9, 2016, Bankruptcy Court hearing is attached hereto as Exhibit 1; *see* Ex. 1 at 15:19-21; 40:13-42:11 and ECF No. 216.

8. Ullrich was able to call this to the attention of the Court of Appeals which issued a subsequent order to address the recalcitrance of the Bankruptcy Court. A copy of Ullrich's Motion for Reconsideration and/or Clarification is attached hereto as Exhibit 2; a copy of the Eleventh Circuit's order granting Ullrich's Motion for Clarification of its April 27, 2016, order is attached hereto as Exhibit 3.

9. Among many concerns Ullrich has is the Bankruptcy's Court's refusal to consider a timely filed Rule 9011 Motion on its merits (ECF Nos. 207 and 216) and then the issuance of an order stating that even if the Bankruptcy Court had considered the Motion, it would have denied it anyway—this without affording Ullrich a hearing. *See* ECF No. 219.

10. Another significant concern is extreme likelihood that various matters to be taken up by the Bankruptcy Court are certain to be appealed to the U.S. District Court, by one party or the other, compounding the work and resulting expense. For these reasons, we respectfully request that reference from the Bankruptcy Court be withdrawn of remand proceedings, if any, stemming from the bankruptcy appeal currently before the U.S. District Court/Hon. Marcia G. Cooke [Case No. 16-CV-61168-MGC].

## **ULLRICH'S CLAIMS**

11. Peter Ullrich was one of the creditors of Nica. Welt, as Assignee, offered to sell Ullrich one of the assets of Nica—shares of stock in Mares Nica Noruegos S.A., a Nicaraguan corporation known as "Nicanor." *See* ECF No. 9-8. Ullrich was a major shareholder in Nicanor and loaned some eight million dollars to Nicanor in Convertible Notes, i.e. promissory notes which

could be converted to additional shares of stock in Nicanor. *Id*. at p. 2. However, in order to convert those notes to shares of stock in Nicanor, Ullrich needed Nica to vote its shares in favor of his request. *Id*.

12. During the ABC proceeding initiated by Welt in Miami-Dade Circuit Court, Welt entered into an agreement with Ullrich to vote the shares of Nicanor owned by Nica in favor of converting the Notes into shares of Nicanor stock and also to sell other Nica assets to Ullrich. *Id*. at pp. 2-3. Welt accepted a substantial down payment in accordance with the terms of the verbal agreement.[2] *Id*. at p. 4. Welt's lawyers at Sanders & Dempsey, LLP, now known as Squire Patton Boggs ("Squire"), were to draft the necessary documents and complete the agreement. *See* ECF Nos. 9-8 at pp. 4-5 and Ex. 3. Instead of doing this and despite accepting Ullrich's payment and knowing that Ullrich was investing significant sums into Nicanor in anticipation of Welt's vote, Welt entered into another agreement to sell the same assets to a different buyer. *See* ECF Nos. 9-8 at pp. 4-5. Unaware of Welt's perfidy, Ullrich advanced an additional million dollars to Nicanor in reliance upon Welt's promises. *See* ECF No. 9-7 at pp. 3-4. Welt's double dealing led to years of litigation and in the interim Nicanor ceased to operate and Ullrich lost his entire investment. *See* ECF No. 9 at pp. 4-5.

13. Ullrich then moved to remove Welt as assignee for cause and sued him in State Court for fraud, breach of contract and for promissory estoppel damages (Broward County Circuit Court, Florida Case No. 062011CA31923A CE). *See* ECF Nos. 9-7 and 9-5. In order to frustrate Ullrich's efforts to hold him accountable, Welt took Nica into Bankruptcy. *See* ECF No. 1.

---

[2] Welt's lawyers memorialized a portion of the verbal agreement into a written memorandum. *See* ECF No. 9-8 at Ex. 3. Welt does not dispute that he entered into the Agreement and that he accepted the down payment. *Id*. at pp. 2-4. He even admits spending the down payment money. *Id*. at p. 4.

Somehow, Ullrich's civil suit against Welt was removed to the Bankruptcy Court, even though it was not possible that it was a claim against Nica. *See Ullrich v. Welt*, Adv. No. 12-02242-JKO; ECF No. 199.

14. At the time Nica entered bankruptcy, the only issues remaining in the ABC Case were the claims *against Welt* for malfeasance and misfeasance and a malpractice claim Welt brought against his own lawyers at Squire Sanders for their handling of the ABC Case. *See* ECF Nos. 9, 24-1, and 95. Welt had failed to liquidate the assets assigned to him by Nica and had already abandoned those assets. *See* ECF Nos. 9-2, 24-1, and 95.

15. Although Ullrich repeatedly challenged Welt's authority to file for bankruptcy on behalf of Nica, he was repeatedly and unjustifiably rebuffed in this bankruptcy proceeding. *See* ECF Nos. 9, 10, 61, and 62; *Ullrich*, 810 F.3d at 787.

16. Over Ullrich's repeated objections, two settlements were consummated during the course of the Nica bankruptcy proceeding. The first settlement purported to resolve all of Welt's liability—even for claims for damages suffered by Ullrich—for a token payment of $50,000.00 ("Welt Settlement"). *See* ECF Nos. 94 and 96. The second settled the malpractice claim against Squire Sanders for a mere $210,000.00 ("Malpractice Settlement"). *See* ECF Nos. 113 and 129. Both settlements gave rise to appeals to the U.S. District Court and eventually the U.S. Court of Appeals for the Eleventh Circuit by Ullrich and another party, Biotec Holdings, A.S. ("Biotec").

17. On December 17, 2015, the Eleventh Circuit, on appeal from the Bankruptcy Court's order approving the Welt Settlement, ruled that the Bankruptcy Court erred in failing to dismiss the instant bankruptcy case as an unauthorized filing by Welt and that, as a result, the Bankruptcy Court lacked subject matter jurisdiction to proceed with the bankruptcy case:

> Rather than dismissing the case for lack of subject matter jurisdiction based on an authority-to-file challenge, these courts rightly assumed jurisdiction in order to

> address the challenge. The Bankruptcy Court here was not wrong to do the same. Its ruling once it got to the merits, however, was wrong.

*Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781, 789 (11th Cir. 2015).[3] Accordingly, the Eleventh Circuit remanded with instructions to dismiss the bankruptcy case. *Id*. at 791.

18. On April 27, 2016, citing to its decision in *Ullrich*, the Eleventh Circuit dismissed Ullrich and Biotec's appeal of the Bankruptcy Court's order approving the Malpractice Settlement and once again stated that the Bankruptcy Court lacked jurisdiction over the bankruptcy:

> In this appeal, two major creditors in the Nica Holdings, Inc. bankruptcy challenge the district court's dismissal of their appeal of a bankruptcy court order authorizing a settlement agreement. ***But because we held in Ullrich that the bankruptcy court lacked jurisdiction over the bankruptcy***, *see id*. at 788-91, the challenged bankruptcy court order is void. *See Truett v. Johns-Manville Sales Corp.*, 725 F.2d 1301, 1302 (11th Cir. 1984) (per curiam) (where district court lacked jurisdiction to grant a motion, its order doing so was "void *ab initio*"). The parties agree that this appeal should now be dismissed as moot. Accordingly, this appeal is dismissed.

ECF No. 199-6 (emphasis supplied).

19. On May 9, 2016, the Bankruptcy Court held a hearing as a result of the mandate issued by this Court in *Ullrich* and expressed uncertainty as to the scope of its mandate. *See* Ex. 1 at 15:19-21; 40:13-42:11. The Bankruptcy Judge stated that because this Court did not instruct him to void the respective settlement orders and did not tell him to return the parties to the *status*

---

[3] Welt had no authority to place the debtor, Nica Holdings, Inc., into bankruptcy:

> Nica deliberately selected an ABC as its preferred mode of liquidation and executed an agreement manifesting that intent, consistent with Florida law. It trusted Mr. Welt to "faithfully and without delay carry out her or his duties under the assignment." Fla. Stat. § 727.104(b); Doc. 20– 2:3. He didn't do that. Instead, when trouble started, he terminated the ABC by purporting to send Nica into bankruptcy. **Mr. Welt had no such authority**.

*Ullrich*, 810 F.3d at 791; *see* ECF No. 24-1.

*quo ante*, he believed he had no authority to act beyond ordering the dismissal of the unauthorized bankruptcy. *See* Ex. 1 at 15:19-21.

20. On May 17, 2016, owing to the Bankruptcy Court's position on remand, Ullrich moved the Eleventh Circuit for clarification of its April 27, 2016, order. *See* Ex. 2.

21. On May 20, 2016, rejecting Ullrich's pleas on remand for corrective action, the Bankruptcy Court issued an Order Dismissing Case which provided that the settlement funds held in the Bankruptcy Estate were to be turned over by the Chapter 7 Trustee to the attorneys for Welt in his capacity as ABC Assignee. *See* ECF No. 216. This order also provided that all pending motions were denied for lack of jurisdiction, including the motion for sanctions Ullrich filed against Welt on remand pursuant to Rule 9011 and the inherent powers of the courts. *See* ECF Nos. 207 and 216

22. On May 24, 2016, notwithstanding the May 20, 2016, Order Dismissing Case, the Bankruptcy Court issued an order denying Ullrich's motion for sanctions against Welt. *See* ECF No. 219. No hearing was held. This order stated that even if the Bankruptcy Court had jurisdiction to consider Ullrich's motion for sanctions, it would have denied it on the merits because "Welt's actions were warranted by existing law as it existed at the time of the bankruptcy filing." *See* ECF No. 219 at p. 2.

23. On May 27, 2016, Ullrich appealed the Bankruptcy Court's Order Dismissing Case. *See* ECF No. 221. The appeal was subsequently assigned to Judge Cooke [Case No. 16-CV-61168-MGC].

24. On July 27, 2016, the Eleventh Circuit granted Ullrich's motion for clarification of its April 27, 2016, order and issued a new order stating that the *Ullrich* decision required the Bankruptcy Court to reverse the bankruptcy settlements:

> Appellant's motion for clarification of our April 27, 2016 order dismissing the current appeal as moot is GRANTED. **The April 27, 2016 order is VACATED and replaced by the following**:
>
> This appeal is associated with case number 14-14685, which was resolved by an order of our court in *Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781 (1 lth Cir. 2015). Now in this appeal, two major creditors in the Nica Holdings, Inc. bankruptcy challenge the district court's dismissal of their appeal of a bankruptcy court order authorizing a settlement agreement. **In *Ullrich*, 14-14685, we held that the bankruptcy court lacked jurisdiction over the bankruptcy case, so the settlements it authorized were due to be reversed in accordance with our opinion. *See id*. at 788-91, 788 n.8. Thus, the bankruptcy court's orders authorizing the settlements are void.** *See Truett v. Johns-Manville Sales Corp.*, 725 F.2d 1301, 1302 (11th Cir. 1984) (per curiam) (where district court lacked jurisdiction to grant a motion, its order doing so was "void ab initio"). The parties agree that this appeal should now be dismissed as moot, and by this order, it is

Ex. 3 (emphasis supplied).

25. As of the date of this Motion, the appeal currently before Judge Cooke has been fully briefed.

## LEGAL STANDARD

26. 28 U.S. Code § 157(d) states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id*.

27. The first sentence of § 157(d) addresses "permissive withdrawal," and the second, "mandatory withdrawal." *Hvide Marine Inc. v. Kimbrell (In re: Hvide Marine Inc)*, 248 B.R. 841 (M.D. Fla. 2000) (citing *In re American Body Armor and Equip.*, 155 B.R. 588, 590 (M.D. Fla. 1993)). Where a proceeding requires the consideration both title 11 and "other laws of the United States regulating organizations or activities affecting interstate commerce," the district court *must*

withdraw the reference. A district court *may* withdraw the reference where cause is shown. Permissive withdrawal is within the discretion of the district court. *Id*. at 844.

28. The Eleventh Circuit suggested that certain factors be considered when determining what constitutes "cause," such as: (1) advancing uniformity in the administration of bankruptcy law; (2) prevention of forum shopping; **(3) conservation of the parties' resources**; and (4) facilitation of the bankruptcy process. *Id*. (citing *In re Simmons*, 200 F.3d 738, 741 (11 Cir. 2000) and *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11 Cir. 1991)) (emphasis supplied). Other factors considered by the courts include "(1) whether the claim is core or non-core; [footnote omitted] **(2) efficient use of judicial resources**; (3) a jury demand, and **(4) prevention of delay.**" *In re TPI Int'l Airways, Inc.*, 222 B.R. 663, 668 (S.D. Ga. 1998) (emphasis supplied).

**ARGUMENT**

29. In effort to prevent further unnecessary litigation and delay in the Bankruptcy Court, Creditor Clarisse Ullrich requests that reference be withdrawn from the Bankruptcy Court for remand proceedings, if any, stemming from the appeal of the Bankruptcy Court's Order Dismissing Case currently before the District Court/Judge Cooke [Case No. 16-CV-61168-MGC]. *See In re Wi-Ski Inflight, Inc.*, 483 B.R. 788, 793 (N.D. Ga. 2012) (noting that, "based on the Eleventh Circuit's case law," economical use of the parties' resources is the most important factor in deciding whether a court should "exercise its discretion to withdraw the reference"). Given that Judge Cooke has been fully briefed of the issues on remand from the Eleventh Circuit's decision in *Ullrich* and because the Bankruptcy Court has demonstrated that it will not entertain a full and fair hearing on the merits on Ullrich's motion for sanctions against Welt, Creditor Clarisse Ullrich believes that the most expedient and cost effective means of equitably disposing of this unauthorized bankruptcy rests with Judge Cooke conducting any remand proceedings necessary.

30. The instant case is unusual in that an appellate court has ruled that the Bankruptcy Court was without subject matter jurisdiction in proceeding with a bankruptcy it erred in failing to dismiss as an unauthorized filing. *Ullrich*, 810 F.3d at 789 ("Rather than dismissing the case for lack of subject matter jurisdiction based on an authority-to-file challenge, these courts rightly assumed jurisdiction in order to address the challenge. The Bankruptcy Court here was not wrong to do the same. Its ruling once it got to the merits, however, was wrong."). Notwithstanding the Bankruptcy Court's error at the onset of the bankruptcy, the Bankruptcy Court went on to approve two questionable settlements—*one of which purported to settle claims for damages suffered by Ullrich*.

31. On remand from the Eleven Circuit's decision in *Ullrich*, however, considerable and plainly dilatory litigation ensued over the Eleventh Circuit's intent in *Ullrich* as to the reversal of the settlements reached in the unauthorized bankruptcy case. Ullrich maintained that because the bankruptcy was ruled to be unauthorized, the Bankruptcy Court's orders approving the settlements were void *ab initio*[4] and therefore those orders needed to be vacated and undone in order to restore the parties to the *status quo ante*.

32. The parties benefiting from the settlements, Welt and Squire Sanders, however, strongly opposed any corrective action beyond dismissal by the Bankruptcy Court on remand from *Ullrich*. *See* ECF Nos. 191, 193, 194, and 206. Welt and Squire Sanders in effect seek to capitalize on the fruits of an unauthorized bankruptcy and leave intact the settlements that insulate them from liability arising from their misconduct in the Nica ABC Case—settlements which the Eleventh

[4] Ullrich's interpretation of the intended effects of *Ullrich* has been confirmed to be the correct interpretation by the Eleventh Circuit on **two separate occasions**. *See* ECF Nos. 185, 196, and 199-6, and Ex. 3.

Circuit has ruled "were due to be reversed in accordance with our opinion [in *Ullrich*]." *See* Ex. 3.

33. Notwithstanding the clear and legally recognized implications of the *Ullrich* decision and the Eleventh Circuit's April 27, 2016, order, the Bankruptcy Court, on remand, once again over Ullrich and Biotec's objections sided with Welt and Squire Sanders[5] and issued an Order Dismissing Case which directs the Chapter 7 Trustee to hand over the settlements to Nica Assignment Estate. *See* ECF No. 216. This order allows Welt and Squire Sanders to argue in the state courts that the bankruptcy settlements are still valid.[6] This order also denied Ullrich a full

---

[5] In its decision in *Ullrich*, the Eleventh Circuit observed the uphill, lopsided battle Ullrich faced in the Bankruptcy Court to get virtually anything done. *See Ullrich*, 810 F.3d at 784-85 and 787. *Ullrich*, for example, noted:

> [W]hile the bankruptcy proceedings have not been stayed pending appeal, we must also consider why not. *See In re Club Assocs.*, 956 F.2d at 1069 n. 11. **It's not entirely for Mr. Ullrich's lack of trying.** It's true that he did not move for a stay after the Bankruptcy Court approved the Adversary Settlement on July 15, 2013, which in turn allowed the Adversary Proceeding to be dismissed with prejudice on December 19, 2013. But no third parties were affected by that settlement, and no money was distributed from the estate as a result. The Adversary Settlement was simply a means of dropping the Adversary Proceeding in favor of pursuing the Malpractice Claim. In contrast, the Malpractice Settlement contemplated extinguishing Nica's only remaining asset in exchange for a potential payout to creditors. When Mr. Ullrich became aware of this, he quickly and diligently sought a stay. **But his motions were repeatedly denied—first for being too early, then for being too late.** If we are to believe that Mr. Ullrich's oral motion at the end of the Malpractice Settlement hearing was "premature", while his written motion was too late because the parties had consummated the settlement "[i]mmediately following the Court's oral ruling [at the hearing]," **then apparently there was never a time when Mr. Ullrich could file a motion to stay the Malpractice Settlement. On this record, we cannot fault him for not getting a stay.**

*Ullrich*, 810 F.3d at 787 (emphasis supplied).

[6] Welt had in fact already argued against the reopening of Ullrich's action against him in Broward Circuit Court on the grounds that his settlement in the bankruptcy court was still valid. A copy of the referenced Welt opposition in Florida Case No. 062011CA31923A CE is attached hereto as Exhibit 4.

and fair hearing on the merits on his motion for sanctions for "lack of jurisdiction" even though, as Ullrich noted in his motion for sanctions, that bankruptcy courts may consider a motion for sanctions even after a bankruptcy case is dismissed. *See* ECF No. 216; *see also In re Whitney Place Partners*, 123 B.R. 117, 122 (Bankr. N.D. Ga. 1992) ("Accordingly, the dismissal of the above-styled case did not deprive this court of jurisdiction to hear a motion for Bankruptcy Rule 9011 sanctions.")[7].

34. As ten (10) months have elapsed since the Eleventh Circuit's decision in *Ullrich*, Clarisse Ullrich respectfully requests that the District Court, namely Judge Cooke, finally bring this unauthorized bankruptcy to its proper end without further unnecessary and costly delays.

**WHEREFORE**, Clarisse Ullrich, as the Personal Representative of the Estate of Peter Fritz Ullrich, requests that the reference of any remand proceedings arising from the appeal currently before the Hon. Marcia G. Cooke be withdrawn from the Bankruptcy Court.

## CERTIFICATE OF CONFERENCE

**I HEREBY CERTIFY** prior to filing this Motion, undersigned counsel made a good faith effort to confer with the parties who may be affected by the relief sought herein. On November 3, 2016, undersigned counsel circulated a copy of this Motion to the parties listed on the service list below. Biotec Holdings, A.S., agrees to the Motion. Welt, Squire Sanders/Squire Patton Boggs, and Tina Talarchyk do not agree to the Motion. The Chapter 7 Trustee did not respond.

[7] In *In re Whitney Place Partners*, the court granted a ***creditor's*** motion for Rule 9011 sanctions against a debtor's partners and its general partners for initiating a chapter 11 proceeding for an improper purpose—the farfetched hope that some lender or purchaser might appear to fund reorganization. *In re Whitney Place Partners*, 123 B.R. at 122.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Motion has been served upon all parties receiving service via CM/ECF below on the 9th day of November, 2016.

Respectfully Submitted:

/s/ Irwin R. Gilbert________

IRWIN R. GILBERT, ESQ.
Florida Bar No. 099473
KELLEY KRONENBERG
1475 Centrepark Blvd., Suite 275
West Palm Beach, Florida 33401
Phone: 561.684-5956 Fax: 561-684-5753
Primary: igilbert@kelleykronenberg.com
Secondary: irgeservice@kelleykronenberg.com
*Counsel to Clarisse Ullrich, Personal Representative of the Estate of Peter Fritz Ullrich*

**SERVICE LIST**

**Case No.: 12-32686-JKO**

**United States Bankruptcy Court, Southern District of Florida**

The following parties are registered to receive Notice of Electronic Filing and should have been served through CM/ECF:

| | |
|---|---|
| Eleanor T Barnett<br>Heller Waldman, P.L.<br>ebarnett@hellerwaldman.com<br>*Counsel for Biotec Holdings A.S.* | Omar K. Bradford<br>David C. Cimo, Esq.<br>Genovese Joblove & Battista, P.A.<br>obradford@gjb-law.com<br>gjbecf@gjb-law.com<br>dcimo@gjb-law.com<br>gjbecf@gjb-law.com<br>*Counsel for Kenneth A. Welt, et al.* |
| Anthony J Carriuolo<br>Paul Steven Singerman, Esq.<br>Bergman Singerman, L.L.P.<br>acarriuolo@bergersingerman.com<br>MNewland@bergersingerman.com<br>efile@bergersingerman.com<br>efile@ecf.inforuptcy.com<br>singerman@bergersingerman.com<br>mdiaz@bergersingerman.com<br>efile@bergersingerman.com<br>*Counsel for Squire, Sanders & Dempsey (US) LLP, d/b/a Squire, Sanders & Dempsey, LLP* | Drew M. Dillworth<br>Kristopher E. Pearson<br>Sterns Weaver Miller, P.A.<br>ddillworth@stearnsweaver.com<br>mfernandez@stearnsweaver.com<br>bank@stearnsweaver.com<br>rross@stearnsweaver.com<br>dillworthcdp@ecf.epiqsystems.com<br>cgraver@stearnsweaver.com<br>kpearson@stearnsweaver.com<br>mmasvidal@stearnsweaver.com<br>bank@stearnsweaver.com<br>rross@stearnsweaver.com<br>dillworthcdp@ecf.epiqsystems.com<br>larrazola@stearnsweaver.com<br>sanderson@stearnsweaver.com<br>cgraver@stearnsweaver.com<br>*Counsel for Trustee Leslie Osborne* |

| | |
|---|---|
| Adrian C. Delancy<br>Grace E. Robson, Esq.<br>Jerry M. Markowitz<br>Markowitz Ringel Trusty & Hartog, P.A.<br>adelancy@mrthlaw.com<br>gruiz@mrthlaw.com<br>ycandia@mrthlaw.com<br>ecfnotices@mrthlaw.com<br>mrthbkc@gmail.com<br>grobson@mrthlaw.com<br>jgarey@mrthlaw.com<br>ycandia@mrthlaw.com<br>mrthbkc@gmail.com<br>jmarkowitz@mrthlaw.com<br>ycandia@mrthlaw.com<br>rrubio@mrthlaw.com<br>joyecf@mdrtlaw.com<br>mrthbkc@gmail.com<br>*Counsel for Nica Holdings, Inc., et al.* | Irwin R. Gilbert<br>Kelley Kronenberg, P.A.<br>igilbert@kelleykronenberg.com<br>rrivera@kelleykronenberg.com<br>jmintz@kelleykronenberg.com<br>szonaid@kelleykronenberg.com<br>*Counsel for Peter Ullrich* |
| Leslie S Osborne<br>osbornetrustee@kennethrappaportlawoffice.com<br>lso@trustesolutions.com<br>lo@trustesolutions.net | Jennifer H Pinder<br>Mark J Wolfson, Esq.<br>Foley & Lardner, L.L.P<br>jpinder@foley.com<br>KCavanaugh@foley.com<br>mwolfson@foley.com<br>jhayes@foley.com<br>*Counsel for Peter Ullrich* |
| James H Fierberg<br>jhfpa@bellsouth.net<br>*Counsel for Kenneth A. Welt* | Chad P Pugatch, Esq.<br>cpugatch.ecf@rprslaw.com<br>*Counsel for Kenneth A. Welt* |
| Office of the United States Trustee<br>USTPRegion21.MMECF@usdoj.gov | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: CASE NO. 12-32686-JKO
NICA HOLDINGS, INC.,
Debtor.
_________________________________/

ECF #185, 187, 189, 191, 192, 193, 195, 196, 199
May 17, 2016

The above-entitled cause came on for hearing before the Honorable JOHN K. OLSON, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd., Fort Lauderdale, Broward County, Florida on May 9, 2016, commencing at or about 10:30 a.m., and the following proceedings were had.

Transcribed from backup digital recording by:
Cheryl L. Jenkins, RPR, RMR



APPEARANCES:

LESLIE OSBORNE, Trustee

GENOVESE JOBLOVE & BATTISTA, by
GLENN D. MOSES, Esquire
On behalf of Kenneth Welt, Trustee

BERGER SINGERMAN, by
ANTHONY J. CARRIUOLO, Esquire
On behalf of Squire Patton & Boggs

MARKOWITZ RINGEL TRUSTY + HARTOG, by
ADRIAN DELANCY, Esquire
JERRY MARKOWITZ, Esquire
On behalf of the Debtor

KELLEY KRONENBERG, by
IRWIN R. GILBERT, Esquire
On behalf of Peter Ullrich

STEARNS WEAVER, by
KRISTOPHER E. PEARSON, Esquire
On behalf of Leslie S. Osborne, Trustee

RICE PUGATCH ROBINSON STORFER & COHEN, by
CHAD PUGATCH, Esquire
On behalf of Kenneth Welt, individually

HELLER WALDMAN, by
GLEN WALDMAN, Esquire
On behalf of Biotec



ALSO PRESENT

KENNETH A. WELT, former trustee

ECRO - Electronic Court Reporting Operator

\- - - - - - -



(Thereupon, the Court's digital recording failed and the transcript was prepared from the Court's backup recording as follows:)

ECRO: All rise.

THE COURT: Thank you. Please be seated.

In Nica Holdings let me take appearances, please.

MR. GILBERT: Irwin Gilbert for creditor ---

ECRO: You need to ---

THE COURT: Mr. Gilbert, I don't believe your microphone is turned on. If the red light is not on, it is not.

MR. GILBERT: Sorry, Judge.

THE COURT: It's okay.

MR. GILBERT: Hopefully this is working better. Irwin Gilbert for creditor Peter Ullrich.

THE COURT: Is it?

ECRO: It doesn't sound like it's on.

THE COURT: Use the --

ECRO: Yes, the podium.

THE COURT: -- one on the podium, please, Mr. Gilbert.

MR. GILBERT: One last time. Irwin Gilbert for creditor Peter Ullrich.

THE COURT: Thank you, Mr. Gilbert.





EXHIBIT 1

MR. OSBORNE: Good morning, your Honor. Les Osborne, Chapter 7 trustee.
THE COURT: Thank you, Mr. Osborne.
MR. PUGATCH: Good morning, your Honor. Chad Pugatch representing Mr. Welt individually in the adversary proceeding.
THE COURT: Thank you, Mr. Pugatch.
MR. MOSES: Good morning, your Honor. Glenn Moses, Genovese Joblove & Battista, and we were special counsel to Mr. Welt in connection with the Squire litigation.
MR. WELT: Good morning, your Honor. Kenneth A. Welt.
THE COURT: Thank you, Mr. Welt.
MR. WALDMAN: Good morning, your Honor. Glen Waldman of Heller Waldman on behalf of Biotec.
THE COURT: Thank you, Mr. Waldman.
MR. WALDMAN: You're welcome, Judge.
MR. PEARSON: Good morning, your Honor. Kristopher Pearson, P-e-a-r-s-o-n, Stearns Weaver Miller, here on behalf of Chapter 7 trustee, Leslie Osborne.
THE COURT: Thank you.
MR. CARRIUOLO: Good morning, your Honor. Anthony Carriuolo of Berger Singerman for Ms. Talarchyk and Squire Patton Boggs.



THE COURT: Thank you, Mr. Carriuolo.
MR. DELANCY: Good morning, your Honor. Adrian Delancy, and I'm joined by my partner Jerry Markowitz, Markowitz Ringel Trustee + Hartog, on behalf of the assignment estate, Ken Welt as assignee. Thank you.
THE COURT: Thank you, Mr. Delancy and Mr. Markowitz.
Mr. Gilbert, you may proceed.
MR. GILBERT: Thank you, your Honor. May it please the Court.
Ullrich has two motions that he has brought before the Court this morning. The first is a renewed motion to dismiss the bankruptcy and to vacate the orders that were entered during the time of the bankruptcy.
We've provided your Honor with legal authority with respect to the necessity of treating this proceeding as being void ab initio, but not the least of which was a second decision from the 11th Circuit in an appeal in which the Court specifically observed that it was moot, and then observed within it, within the body of its decision that, in fact, the Bankruptcy Court had lacked jurisdiction, and that orders that were entered in a circumstance where jurisdiction was absent, were void ab initio, and what I would ask the Court to take into



consideration, particularly in view of the responses filed by other parties, is I don't really believe procedurally there is any doubt as to the Court's jurisdiction to go beyond merely issuing an order of dismissal.
I say this for two reasons. The first is that I don't believe procedurally the consequence of the 11th Circuit saying that you erred when you denied the original motion to dismiss would leave your Honor in a posture any different than if you had granted the motion at that time. You would have retained the jurisdiction to do those things that were necessary to wind up the bankruptcy, and thinking of, just by way of example, Judge Paskay's decision in the Zaragoza (phonetic) case, there is an example of the Court having entered an order of dismissal saying that the Court -- that the filer did not have authority, and then having retained jurisdiction to deal with subject matter.
In that particular instance it was sanctions, but I don't think it would be any different, and I also think it's implausible to leave the trustee in a position where the Court would dismiss the bankruptcy and terminate the trustee's authority and then leave unanswered the question of what does the trustee do with the funds in his hands.
I also observe that the trustee asks the



Court to retain jurisdiction to determine if a motion is filed, his motion to recover costs and to pay the professionals associated with services rendered to the trustee. While I would at that time argue against an award of attorneys' fees to the trustee in the circumstances, I do not dispute the notion that the Court retains jurisdiction to allow such motions to be filed, and consistent with that we have, prior to today, filed our own motion for 9011 sanctions that has been set for a later date, obviously subject to whether or not this Court in its order of dismissal retains jurisdiction for that purpose.
I do want to suggest to the Court that the suggestion made by, for example, the Talarchyk and Squire parties, that the settlements are continued to be valid, and a suggestion of Mr. Welt that you should leave it to other courts, state courts to determine whether or not the settlements that were reached in this case are valid, would miss the point of this Court -- of this case, rather, being void ab initio.
All of the settlements that were reached before your Honor were subject to approval of the Court, the settlements that were entered into in this case were settlements that were entered into by the trustee, and if the bankruptcy is void ab initio, that would have to be





c13eb008-741d-4492-9eaf-5144fcd1a0cc

void as well.

I want to -- I'm sorry, your Honor, did you ---

THE COURT: Go ahead. I will have some questions for you.

MR. GILBERT: I wanted to emphasize that even the settlement that Mr. Welt entered into with Squires and with Talarchyk, and this is a settlement that included the trustee, and was subject to the approval of this Court, to the extent that Mr. Welt purported to enter into that settlement in his capacity as assignee of the original ABC case, is truly problematic.

I think as a matter of law when he filed this bankruptcy case, he ceased to be the assignee, and in addition to that had he retained power as assignee, and notwithstanding all that's occurred, he couldn't enter into a settlement of that type without notice to creditors in the ABC case, without either the consent of those creditors, or with the assent, alternatively, of the ABC court. As assignee he had no greater authority to do that than he would if he were a trustee in this Court, he'd still have to come and obtain approval of the Court. In ABC cases there is an alternative where you can get all of the creditors to agree. No notice was ever given to those creditors. No notice was ever given to the ABC court. No



relief was obtained from the ABC court.

I respectfully request that this Court order the trustee to return 210,000 to the Squire firm, and likewise order the trustee to return the deposit made by Mr. Welt.

Now, here is the problem, that deposit, albeit a year after your Honor approved the settlement with Mr. Welt, has been depleted. That $50,000 has been reduced two ways. The trustee, in compliance with rules that are inescapable for the trustee, has been paying Green Bank (phonetic) monthly fees based upon the deposits in that account, that has -- and I should point out Mr. Welt parentally used the ABC's funds to pay the filing fees in this Court, and the monthly fees first eroded the remaining 7,000 and change from that original deposit, and then kept going until there is now less than $260,000 in the trustee's hands. We suggest, your Honor, that Mr. Welt needs to bear those costs since he is singularly at fault for filing an unauthorized bankruptcy. That is part of the subject matter of our later filed motion for sanctions and ---

THE COURT: That motion for sanctions was filed last week?

MR. GILBERT: Yes, sir, and I think that procedurally it would be a proper use of the Court's



discretion to say that the refund to Mr. Welt has to be delayed until the Court determines what setoffs of his $50,000 would be charged to him, so that -- and in total transparency, Judge, my concern here is, is that I want to return the settling parties to the posture that they were in before the settlements were made. This would ease the revival of the underlying litigation, both the claim against Mr. Welt, and even reviving Mr. Welt's litigation against the Squire firm.

Because there are insufficient funds to do it, if the Court should determine that it's Mr. Welt that has to bear the difference, bear the loss, if you will, then Mr. Welt would not be heard to complain about getting less than $50,000, and could not be heard to complain that he wasn't really being put back in the posture he was in beforehand.

And I want to thank your Honor for your patience in this matter.

THE COURT: Mr. ---

THE CLERK: Judge, I rise only to make you aware of the fact that the court recording system has gone down, and we are operating only on the backup recorder, and so the parties may want to make extra sure that they are particularly articulate when they are making their oral argument so that that picks everybody up.



MR. GILBERT: A hopeless task for me, your Honor.

THE COURT: Well, I have never noted you, Mr. Gilbert, to lack being articulate. You made yourself perfectly clear.

I'm confused by your suggestion that I do more than simply dismiss this Chapter 7 case, which, as I read the 11th Circuit's mandate on Page 21 of the order that the Court entered on the appeal, that judgment entered on December 17th, 2015, on Page twenty -- on the last page they say: We, therefore, reverse, and remand instructions to the District Court, to remand to the Bankruptcy Court for dismissal of the bankruptcy case, and Judge Marra's order entered January 15th, 2016 says that the case is remanded to me for proceedings consistent with the mandate of the 11th Circuit Court of Appeals. I'm reading Footnote 8 in the 11th Circuit judgment, it's on Page 13 of 21, and it seems to suggest -- well, it's clear that the Court of Appeals is aware of the other litigation, was aware of the settlement between Mr. Welt and Squire Patton Boggs, but suggested that all those problems, whatever they were, could be handled in state court litigation, at least that's how I'm reading that footnote, but do you read this footnote differently?

MR. GILBERT: I do, your Honor.





c13eb008-741d-4492-9eaf-5144fcd1a0cc

THE COURT: And how do you read it?

MR. GILBERT: Well, first I want to point out to the Court that the 11th Circuit is contemplating a process without designating where part or parts of that process will take place.

There is, for example, your Honor, the, I believe it's Watts versus Pinckney 9th Circuit case that we have cited to the Court, it's likewise relied upon by Judge Paskay in the Zaragoza decision, where the specific quote is that these orders are void ab initio, and that the Court must, the Bankruptcy Court must restore the parties to the status quo ante, and I have no doubt that my colleagues who will follow this morning would favor this Court doing nothing more than dismissing and leaving to a less experienced state court judge ---

THE COURT: Well, but presumably one who has jurisdiction.

MR. GILBERT: Well, little doubt in -- I would never suggest that a state court judge lacks jurisdiction to hear a motion to vacate an order, to set aside a judgment.

A number of complications discussed by the 11th Circuit, a number of concerns in that process discussed by the 11th Circuit, it is not merely a matter of convenience for me to ask this Court to clarify



procedurally what the consequences are to the proceedings and the orders that were entered in this case, and respectfully I think there is another mandate that doesn't have to be in the 11th Circuit opinion, and which is cases that we have cited to your Honor for the proposition that when we come before the Court and ask you to vacate an order that is void, not voidable, but void when made, that the Court must vacate those orders.

I don't think, for example, that the Bankruptcy Court intended to leave this Court and the trustee with its feet planted firmly in midair as to what to do with two hundred and forty something thousand dollars and if, in fact, the trustee was left in that posture, it would continue to erode by the fees that were being charged by Green Bank, fairly substantial fees of $400 a month, almost $5,000 a year.

So I believe, as I said at the outset, and I apologize for repeating myself, but procedurally, and in terms of what the power of the Court is, I believe your Honor is in no different position based upon this reversal than you would have been on that day when we argued the motion to dismiss the bankruptcy for lack of authority, and on that day any property that had been turned over to the trustee by Mr. Welt, the approximately $8,000 or so that had been in the ABC estate, that money



would be directed by the Court to be returned. If under 9011 the Court found that Mr. Welt knew at the time that he signed the petition that he actually had no express authority to do so under Zaragoza, the Court plainly exercised continuing jurisdiction after the dismissal, and I think that another illustration of the general precept is that your Honor retains jurisdiction, if you elect, in an order of dismissal to retain jurisdiction to deal with the conduct before your Honor in the course of the proceedings.

People can't avoid the consequences of their action, for example, by filing a voluntarily dismissal of a case, not in Federal Court, and not in the Bankruptcy Court.

So I don't believe the 11th Circuit intended to constrain the authority that your Honor would have under ordinary circumstances, they certainly did not articulate any stop to ---

THE COURT: But they didn't articulate any go either. The only thing that I was instructed to do was to dismiss the case.

MR. GILBERT: So I would suggest to your Honor that there are two alternative paths. One path is to interpret the decision and apply the reasoning that I've suggested.



Your Honor has the discretion, you have the authority, the Court didn't take it away from you. There is nothing different about this dismissal of a bankruptcy case filed without authority than any other.

The other path would be to ask the 11th Circuit to clarify whether they had intended that your Honor have no further authority, or whether, in fact, you have the authority I'm describing and asking you to exercise it.

And I think other than that, Judge, I'd be guilty of just repeating myself.

THE COURT: Thank you, Mr. Gilbert.

Mr. Pugatch.

MR. PUGATCH: If I may, your Honor, on behalf of Mr. Welt, individually, and, again, Chad Pugatch representing Mr. Welt, individually.

We're here, of course, not in any respect to consider the sanctions motion or anything having to do with the money. So I'm not even going to get into that.

I think we're here to determine exactly -- and I think the Court hit it right on the head, what this mandate directs, because we have an appeal, and we have an opinion, and we have a mandate, and as we all know the mandate governs what happens after it comes back on appeal.

THE COURT: I'm trying my very best to obey the 11th Circuit.

MR. PUGATCH: Absolutely.

THE COURT: When they tell me to do something, I'm probably going to do it.

MR. PUGATCH: Absolutely, and I think we're all clear and agree that you were told to dismiss this case, but you weren't told anything else, and so there are no other directives and, in fact, to the extent that there is any directive here, the Court cited the footnote, I think we included that in our response as well.

So the one place where the 11th Circuit could have and elected to speak on this issue, and could have said, well, of course it's void ab initio. So, therefore, everything gets undone. It didn't say that and, in fact, it said the opposite. It clearly said your remedy is somewhere else in state court, we presume it's equitable tolling, and we assume that that would be granted.

Well, whether that gets granted or not is a matter of what happens in another Court, and that's exactly what they express their opinion to be, which is you've got to go, Mr. Ullrich, to another court to have that relief, if at all.

The problem with the theories espoused by



Mr. Gilbert are that it's a slippery slope, and there is a lot of issues here, and a lot of matters, and if you're going to go back and start unwinding something, there is a lot of places you have to go, and I just didn't think it's appropriate to go to all those places without there having been a directive in the mandate in order to do that. For example, we have a separate adversary proceeding. It was dismissed with prejudice. We have the these settlements, we have other matters that occurred in this case, and the fact that the Court found that the case should be dismissed does not require you to go back and try to find every place where something needs to, or should be, or should be considered to be undone and to do that.

There are remedies in other courts. Whether Mr. Gilbert thinks those courts are as experienced in these matters as this Court is not the issue. The issue is, if your remedy is in another court, that's where you have to go.

So we would urge the Court to stick to the mandate, dismiss the case, and at that point let each of these individual chips fall wherever they ought to fall.

And I point out to the Court again, Mr. Gilbert analogizes to what would have happened had you granted the motion to dismiss when it was filed, but you didn't grant it, that's not the subject of the appeal.



The subject of the appeal was the settlement, and in the course of that the 11th Circuit, as it has a right to do, considered the issue of whether Mr. Welt had authority and, in fact, found not only did he not have authority to settle, but he didn't have authority to file the case. So dismiss the case.

But in doing that, I think the Court also recognized in the analysis, this was an issue of first impression under Florida law with the Florida ABC statute, and perhaps nationwide, in terms of construing an ABC statute. This was not something where somebody knows that they're not a member of the board of directors, and there was no board of directors' approval, but because they're an officer they file a bankruptcy and it gets dismissed. This was a very unique issue. So I think it's dangerous to go beyond what simply the mandate requires, and we would urge simply to dismiss.

THE COURT: Thank you.

MR. PUGATCH: Thank you, Judge.

MR. MOSES: Thank you, your Honor, and I rise not to repeat Mr. Pugatch. We obviously incorporate what he said, but just simply to supplement a few of his points.

We do agree that your Honor ---

THE COURT: Speak up, Mr. Moses, because the



only recording device we have is that little thing that's about the size of a flip phone.

MR. MOSES: An old fashioned phone.

THE COURT: Exactly.

MR. MOSES: Exactly, your Honor.

Okay. Again, I rise not to repeat Mr. Pugatch and what he said. We do agree that your Honor should simply dismiss the bankruptcy without anything further, and just simply to supplement some of the arguments that he made. Your Honor obviously does not need to interpret what the 11th Circuit meant or seek -- or request clarification from the 11th Circuit.

We do note that Mr. Ullrich, in his motion to dismiss, actually does require and request your Honor to grant the motion to dismiss that he filed back in 2012, and in that motion there is allegations of bad faith and, in fact, your Honor found in denying that motion that the bankruptcy was filed in good faith.

And we also note some inconsistent positions taken with respect to the motion. There is a request to vacate orders as being void ab initio, but to grant the motion to dismiss, which your Honor already denied, and also to enforce the automatic stay vis-a-vis the dismissal of the ABC for lack of prosecution. So is it void ab initio, is it voidable? So, there is inconsistent

positions here.

We incorporate what Mr. Pugatch argued orally, and obviously in his findings we think that your Honor should simply dismiss the case, let the state court deal with the extent of the ABC and what claims and causes of action belong to that ABC.

Thank you.

THE COURT: Thank you, Mr. Moses.

Mr. Pearson.

MR. PEARSON: Good morning, your Honor. Kristopher Pearson, P-e-a-r-s-o-n, on behalf of Trustee Osborne.

Your Honor, the trustee is in a unique position here because it wasn't in the prepetition disputes with the parties that have spoke, and it was appointed in normal course, or Trustee Osborne was appointed in normal course, and Trustee Osborne, in fact, waited to administer the case until there was an actual case and Judge Marra had ruled.

There is a statutory duty that Trustee Osborne operated under to liquidate and administer assets, and that's what we did, and the two principal actions that we took were approved by court order here.

Now, I can understand why the parties have the positions they have with respect to what should happen



because it affects them, their pre-activity and their post-activity. However, with respect to the trustee, he is not a party to those, and was not a party to those, and will not be a party to those.

So we had filed ECF 192 and ECF 197, and we raise just three simple points, one of which I think is critical, and it deals with money, and so while Mr. Ullrich has asked for direction to pay out money to certain parties, to the extent that there is a dismissal, as the other parties have asked for, I think it would just kind of leave open what happens to the money.

The Stearns Weaver firm has offered up to be an escrow agent. So to the extent that the Court was to dismiss without direction, then the Stearns Weaver firm certainly would hold as third party escrow agent, just in short we need to get the money out of Trustee Osborne's hands.

The second point is a preservation of jurisdiction pursuits against the trustee and his professionals. The two actions that we took were at Court direction. So our position is, to the extent that that is going to be a lawsuit about anything we did, it directly relates to the orders entered by this Court. So we think that preserving jurisdiction over suits against the trustee and his professionals would not at all alter what



the parties are going to do after this case is dismissed.

THE COURT: Exactly what would such an order say, Mr. Pearson?

MR. PEARSON: To the extent that suits are going to be brought against Trustee Osborne or his professionals, the forum would be before the Bankruptcy Court to adjudicate those suits, because largely the issues would be -- argued by the trustee is that we simply presented what we thought was in our best business judgment, and it was the Court that directed us to act and effectuate those settlements.

So that I don't think would in any way alter anything that's happening between the parties after the dismissal, because it's just simply, is there going to be a suit against the trustee and his professionals, and then we would be relying upon our Court authorization.

And the third point, which is less significant, but I think it would facilitate the ease of the process, but it's not something that's critical is we asked in our papers to reserve for fees, just entitlement only. That's not anything that would adjudicate amount. It's just customary, in Bankruptcy Court we don't need expert witnesses. It's the Court that determines whether the time spent and the hourly rates are reasonable.

So that's something that is merely



ministerial, and it -- again, I don't think it affects what happens to the parties and their litigation going forward, but to the extent that that's something that can't be done, you know, we could deal with that in another forum. It will just make it much more complicated because of the difference between courts of general jurisdiction and courts of specific jurisdiction.

So that's the trustee's perspective and, again, I think it differs from the other parties because hopefully we won't be part of what's going on in the future.

THE COURT: Thank you.

Mr. Osborne.

MR. OSBORNE: Good morning, your Honor. Les Osborne, Chapter 7 trustee.

Just to clarify for the Court, in case a decision is not made today, there will be no further dissipation of the funds. Once I'm ready to close the case, I put it into what we call TFR status. Once I do that, the bank stops charging fees. As soon as this case, the dismissal order came in, I put it in TFR status to stop that, any further draining. There is currently on hand two hundred fifty eight thousand four ---

THE COURT: Hold on a second, 258.

MR. OSBORNE: $410.71, and that should not

go anywhere. So it's just shy of the 260 that we collected, and there was about seven grand that was turned over from Mr. Welt, give or take.

THE COURT: All right. Now, if I simply dismiss the case, what happens to the money?

MR. OSBORNE: Well, that is my question, Judge, since under the rules, absent very limited circumstances, I'm not allowed to disburse funds without a court order. I have never had this situation, obviously, where I've had this, any kind of money -- any kind of dismissal order usually says, if there was any limited amount, give it to the debtor, usually it's by agreement. I've never gotten to a contested matter such as this with these kind of funds.

I would love some direction as to what to do with these funds, because once I'm removed as a trustee, I don't know that I can -- what I can do, honestly, at that stage.

I'm fine with putting it in anyone agreeable's escrow account. I'm fine holding it in my firm's escrow account. Once an ABC is reopened, I can, you know, interplead it. I don't know how the Court would best like to handle it. I would love honestly some direction as to what to do with these funds.

THE COURT: Okay. Thank you.



MR. DELANCY: Your Honor, may I?

THE COURT: Yes, Mr. Delancy.

MR. DELANCY: Thank you, your Honor. Adrian Delancy on behalf of the assignment estate, Ken Welt, as assignee.

I'll make only a couple of brief points, your Honor. During Mr. Gilbert's presentation, he mentioned that -- or implied that there was some sort of issue with regard to lack of notice of the settlement to the creditors in the assignment case, and I'd just point out to the Court that once the bankruptcy was filed, all property of the estate was vested in the bankruptcy case and became -- all property of the assignment estate become property of the estate for the Bankruptcy Court.

The creditors were all put on notice that the bankruptcy had been filed, and to the extent they had issues with regard to the bankruptcy case and the handling of the property, that was the place for them, and they have made use of that procedure.

So I'm not sure what notice process he was referring to, but it would have been improper, we believe, to do anything else in the assignment estate once the bankruptcy case had been filed, and Mr. Welt was divested of authority as the assignee to do anything with property of the assignment estate, because it was now property of



the bankruptcy estate.

And, secondly, with regard to the funds and what happens with regard to an effective dismissal, I would just point to the -- point to Section 349 -- 11 USC 349 to the Court, that has provisions in the instance of dismissal, effective dismissal, and one of those provisions is in 349(b)(3), when it says that dismissal revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

We stand ready, or Mr. Welt stands ready, and we, as attorneys for the assignment estate, to receive any funds that the Court thinks should be immediately transferred to the assignment case upon dismissal. If the Court wants to put that in an order, they can. To the extent that the underlying assignment case is revived, then those will be dealt with. If not, we'll -- we, as counsel for the assignment estate, will petition the state court for distribution accordingly, or winding up of the assignment case.

We believe the mechanisms and the procedures are already within the code, and it doesn't require any special or elaborate orders to be entered as Mr. Gilbert would like.

THE COURT: Well, are you then advocating



that I respond to Mr. Osborne's plea for direction by directing him to turn the money over to your firm as escrow agent for the benefit of the assignment estate, or maybe I don't even go that far. My understanding is that the ABC proceeding itself has been dismissed, is that right?

MR. DELANCY: It has been dismissed for lack of prosecution.

THE COURT: An odd result, one might have thought.

MR. DELANCY: Yes, notwithstanding the trustee, the bankruptcy trustee's notification to the state court. I think it was a procedural oversight, and I'm sure with appropriate -- well, I'm not sure of anything, but with appropriate ---

THE COURT: I'm not sure of anything today either, but ---

MR. DELANCY: With appropriate prompting it may be reinstated, but my firm is happy to act as that sort of agent in lieu and until the appropriate orders are issued by the state court.

THE COURT: All right. Thank you.

MR. DELANCY: Thank you, your Honor.

MR. CARRIUOLO: Your Honor, briefly, Anthony Carriuolo for Squire Patton Boggs.

Just to emphasize a couple of points so they don't get lost, of course the trustee was not the only party to our settlement arrangement. We gained contractual rights through releases, et cetera, with Mr. Welt, aside from the trustee. There are also rights under Florida law that Squire gained through the voluntary dismissal with prejudice of the adversary proceeding, the estate malpractice claim that had been prosecuted by Mr. Welt prior to the bankruptcy filing. Again, those laws are derived from Florida law, not bankruptcy law regarding voluntary dismissals and issuing claim preclusion and release.

So, to the extent that the 11th Circuit has rendered its position with regard to what rights, if any, the trustee had in this case, it does not address our particular contract rights and Florida law rights with regard to other nonbankruptcy parties.

Mr. Welt's rights and actions in this case, including the dismissal of the underlying state court malpractice claim, were not derived in any way from the Bankruptcy Code, and with regard to Mr. Gilbert's comments that this Court should simply disburse back to the parties the monies that were paid over a year ago in consummation of our settlement, in addition to no grounds existing, are being articulated for rescission, we don't believe the



Court, this Court has jurisdiction to entertain such a rescission request, and finally you very appropriately focused on Footnote 8 of the 11th Circuit, and other counsel have. Squire was not a party to that appeal. Our settlement agreement vis-a-vis the trustee, Mr. Welt, and Mr. Welt, as assignee, was not the subject of any particular appeal, but we concur that the 11th Circuit made comment to it, but obviously it was constrained not to take any action with regard to it, and we believe this Court, as well as Judge Marra were equally constrained.

Thank you.

THE COURT: Thank you, Mr. Carriuolo.

Anyone else? Mr. Waldman.

MR. WALDMAN: Like Mr. Moses, I don't want to be redundant. So, essentially, Judge, we agree with the position Mr. Gilbert has taken, insofar as we believe it should be dismissed void ab initio. Importantly, we believe that the settlements that were consummated during this proceedings are also void, and we're anxious to get back to the ABC to go to work. So I will sit down, but we adopt what Mr. Gilbert had to say, and we think that based on the ruling, it's all got to go back.

Thank you, your Honor.

THE COURT: Thank you.

Mr. Gilbert.



MR. GILBERT: Would your Honor permit rebuttal?

THE COURT: Of course.

MR. GILBERT: Some housekeeping. First, the suggestion that there is a contradiction in our position regarding our second motion set on the calendar today, asking this Court to determine that the order in the ABC case was issued during the time that the automatic stay was in effect contradicts our suggestion that the case is void ab initio. With respect, it does not. Until the case is dismissed, until this Court, in effect, carries forward an acknowledgement of the lack of jurisdiction, we would have been subject to sanctions by this Court if we continued to litigate in the ABC case. We were precluded to do so solely by the automatic stay, and so under the circumstances a determination of our second motion, that that stay should have precluded the state court from granting an order to dismiss for failure to prosecute I believe ---

THE COURT: Was there a motion filed by somebody to dismiss for lack of prosecution, or did the state just do it in its own -- the state court just did it?

MR. GILBERT: Well, there is a procedure under Florida Rules of Civil Procedure --



THE COURT: Right.

MR. GILBERT: -- and Florida Statutes, the court on its own initiative ---

THE COURT: If nothing, no record activity has been taken within a year.

MR. GILBERT: Right. Interestingly in this instance we did not -- Mr. Ullrich, as a creditor, did not receive notice of the court's intention to do that. Apparently the trustee did.

I should point out to your Honor, I'm not sure if it matters a lot, but a year prior the Court attempted -- the ABC court attempted to do the very same thing, and the trustee actually filed papers with the Court saying the automatic stay under 362 precludes the state court from granting any relief, and that judge, in the division at that time, took no further action.

Another judge a year later, and I want to say I have no idea if the trustee received notice a second time, it doesn't appear that the trustee filed any further papers, which implies they may not have even had notice of it, but either way, our second motion, I think, is a correct request to have the Court determine that the stay was in effect at that time and is no longer in effect, especially if your Honor should not be prepared today to enter an order dismissing the Bankruptcy Court, which

would -- I'm sorry, the bankruptcy case, which would dissolve the stay, an order granting us relief from that stay would allow us to promptly go before the ABC judge and the judge in the Broward Circuit case, and inform them as to the procedural events and start the process that we need to start. That's that item.

I want to clarify, while creditors in this Court received notice of a motion to approve various settlements at different times, they did not have the power to object and preclude any settlement in the way that they would have in the ABC court.

THE COURT: Well, why is that, Mr. Gilbert?

MR. GILBERT: Well, we have the right to rise in this Court and give the Court the reasons why it should not approve a settlement.

THE COURT: Right.

MR. GILBERT: Under the ABC statute there are two ways for an assignee to close a transaction he wishes to make, one is to give notice to all of the creditors, and if none objects, he can proceed with the transaction. That is not the procedure in this Court. It would have been the procedure in the ABC court. So there is a material difference in the standing ---

THE COURT: Well, wait a minute. You're telling me that because an order wouldn't be necessary in



the ABC, that an order was necessary here, that there is some kind or categorical difference in the result?

MR. GILBERT: The difference, the due process difference has to do with the distinction of what this Court can do in view of the fact that Welt had no authority to file the case at all, what procedural stance the parties should be placed in as a consequence of that. Counsel are arguing to you that the settlements are valid independent of the bankruptcy case, because Mr. Welt, as assignee, had the power to enter into those settlements, and this is really just explaining why that's not correct. Mr. Welt, as an assignee, if he's exercising those powers, and the legal malpractice claims against Talarchyk and Squire pertain to their representation of the assignee in the assignment case, and so for Mr. Welt, in his capacity as assignee to settle that case, independent of the processes of this Court, he either would have had to have given notice to each of the creditors in the ABC case, and if they didn't ascend, he would have to then go before the ABC judge, not your Honor, in order to obtain ---

THE COURT: Well, didn't -- weren't the creditors in the ABC case scheduled as creditors in the bankruptcy case?

MR. GILBERT: I can only speak for



Mr. Ullrich with certainty, but if your Honor was to ask me do I have a -- can I make a factual representation that we compared the lists and we found individuals missing? We didn't do that.

THE COURT: Well, you're suggesting that there was a procedural defect and that due process notice wasn't given to somebody unnamed. Who is that?

MR. GILBERT: The precept is not ---

THE COURT: Who is it that was not given due process notice here?

MR. GILBERT: That's not the argument I'm making, and I apologize if I confused your Honor.

The precept here is, if this Court lacked authority because the bankruptcy is unauthorized, then the only court that would have the authority to approve a settlement of an assignee's claim in an assignment estate is the judge in the ABC case. That could be avoided under the ABC statute if notice was given to all of the creditors and no one objected.

The fact is Mr. Ullrich plainly objected, I believe Biotec plainly objected as well. I'm not sure if anyone else rose and voiced an objection in this Court, but the point is, with those objections procedurally in the state court ABC case, they then would have had to seek state judge approval of the settlement. That never



happened.

So, and I'm going in a little bit of a circle, Judge, but if your Honor lacked the authority to hear this case, then your Honor is not a substitute for the ABC court, approving an action by the assignee of that time.

Mr. Carriuolo suggested, and I'm not sure what his point was, but he suggests that the Squire firm was not a party to the appeal. I don't believe that's correct. They didn't file papers, but the second appeal was actually an appeal from your Honor's order approving the settlement between the trustee and Squire Sanders, now known by a different name.

So they had an absolute right as being affected by that order and the appeal from that order, to participate in that appeal. I think, frankly, they were an interested party, and they could have filed a brief in the initial appeal as well.

And, lastly, Judge, I want to suggest that if the settlements are void ab initio, and I believe they are because the orders approving them are void ab initio, and all of the settlements contained a proviso that court approval, this Court's approval was a condition of the settlement. It makes, it makes no sense to suggest that the trustee or any of these other lawyers would have the





c13eb008-741d-4492-9eaf-5144fcd1a0cc

authority to hold on to property that came into the possession of the trustee in this case.

I think there is an important distinction between the authority of this Court post-dismissal to provide direction to the trustee and to other parties with respect to the winding up of the bankruptcy, restoring the parties to the status quo ante, as I've suggested to the Court is actually an obligation of the Court in these circumstances. That includes telling the trustee to disburse the funds, not continue to hold them, and I note with a little bit of irony, at this moment there is no ABC case, there is no assignee, and so suggesting that these funds could be held for the benefit of the ABC estate makes no sense, suggesting that these funds can be held in escrow by the assignee's lawyers make no sense because there is no authority for that at all.

Just as a practical matter, if nothing else is persuasive, just as a practical matter, the most sensible thing to do, assuming that your Honor believes you have discretion to do anything, is to say, return the $210,000 to Squire Sanders, return so much of the $50,000 as remains from Mr. Welt's contribution to Mr. Welt, perhaps retaining jurisdiction to consider a motion for sanctions against Mr. Welt, perhaps considering the trustee's application, retaining jurisdiction to determine



whether or not this Court should award costs and attorney's fees to the trustee's professionals, something that could occur, your Honor, even if Mr. Welt did not have authority in the first instance. There might be other factors for the Court to consider that leads to a denial of a recovery of legal fees, but in terms of the procedural jurisdiction, to consider it, I think there are numerous post-dismissal orders based upon a lack of dismissal in the juris prudence that plainly indicates that the Court has that power if it elects to retain that jurisdiction.

Here, not only do I believe that your Honor has the discretion, not only do I believe that there is a mandate to return the parties to the status quo ante, there is actually ---

THE COURT: If that's the mandate, Mr. Gilbert, why didn't the 11th Circuit say that? They said dismiss the case, and ---

MR. GILBERT: I have two answers.

THE COURT: -- other sub issues are going to have to be resolved somewhere.

MR. GILBERT: Utilizing my very poor mind-reading powers, and not meaning to sound facetious, despite that introduction, I want to suggest to the Court that it's not unreasonable to construe the 11th Circuit



opinion as being decided against a backdrop of all of these other cases that are part of the jurisdiction -- I'm sorry, part of the jurisprudence that deals with unauthorized filings of bankruptcy cases. It might not have been necessary in this case for the 11th Circuit to articulate more than they did, and of course in our view, from our lens, the decision of the 11th Circuit, the commentary in Footnote 8, suggests that they expect that there is going to be a process that looks like what they described in Footnote 8, that is returning the parties to status quo ante, and then reinvigorating the underlying litigation, notwithstanding the expired statutes of limitation based upon equitable tolling.

If you would allow me, your Honor, to give you perhaps one example of why I might be right, is that if your Honor was to take steps that didn't return the parties to the status quo ante, it seems to me you'd be butting heads with the language in Footnote 8.

So, I don't think there is really that much of a mystery here in terms of what your Honor's authority is. I think I've said it correctly, I'm sorry to say it again, your Honor has a wonderful memory, but it seems to me procedurally we are returned to that moment when there was a motion before you to dismiss the case for lack of authority, that we would be -- there is no other logical



treatment of where we would find ourselves procedurally, feet on the ground, not in midair.

Thank you, Judge.

THE COURT: Thank you, Mr. Gilbert.

Anybody else have anything you want to tell me?

UNIDENTIFIED:: No, sir.

THE COURT: Okay. Let me take a short break. Keep your seats. Please keep your seats.

(Thereupon, a recess was had, after which the following proceedings were had:)

ECRO: All rise.

THE COURT: Thank you. Please be seated.

The 11th Circuit has determined in what I do conceive of as a matter of first impression, the residual rights, such as -- or powers, such as they are, under the Florida Assignment for the Benefit of Creditors Statutes do not, absent express language, permit an assignee to file a Chapter 7 petition on behalf of an assignment estate, or on behalf of the entity that is in the assignment estate, and I have been instructed to dismiss the case.

The Court, in its opinion, discusses the fact that there are ancillary matters and ancillary litigation among the parties, but it doesn't give any

instruction whatever as to what I should do about that.

Several of you here this morning have suggested that there are things I should do. Mr. Pearson suggests I should retain jurisdiction for purposes of passing on fee applications, albeit not granting fee applications. Mr. Gilbert suggests I should undo a number of -- vacate a number of orders that were entered in the course of the case, and had the 11th Circuit told me to do that, I would.

But the clear implication to me of Footnote 8 is that whatever unwinding, or unravelling, or reinstituting has to happen, it has to happen someplace else.

The only thing I'm really left with is an instruction from the Court of Appeals to dismiss the case, and the conundrum of what to do with the money Mr. Osborne is holding, since if the case is dismissed, Mr. Osborne cannot continue to hold the funds.

Section 349(b)(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title, is the only real statutory guidance on what to do with the money, and of course the money that was in -- that is in Mr. Osborne's possession includes proceeds of causes of action or claims upon which relief



should be granted, which themselves arguably were property, or appear to have been property of the ABC estate.

I think that the sensible solution here is for me to dismiss the case, direct Mr. Osborne to remit the funds to the Markowitz firm trust account, to be held there and not disbursed pending order of a court of competent jurisdiction, directing the manner in which those funds should be disbursed, and to whom, otherwise the case will be dismissed and all pending motions denied for lack of jurisdiction.

Mr. Delancy, will you give me that order, please?

MR. DELANCY: Yes, your Honor.

THE COURT: Thank you.

MR. GILBERT: Your Honor, would you add to the order that Mr. Markowitz' firm can deposit the funds in an interest bearing escrow account, rather than their IOTA trust account. That would be consistent with the Florida Bar rules in these circumstances.

THE COURT: Anybody have an objection to that?

MR. DELANCY: No objection, your Honor.

THE COURT: Very good then, Mr. Delancy, when you give me the order, please include that provision



so that whatever minute amount of interest will be earned on those funds in the current banking environment are swept up for the benefit of whomever is entitled to the funds at the end of the day.

It certainly would have been neater and tidier for me to rule on a bunch of the matters that you've brought before me today, but having been told that I have no jurisdiction in the first place, I don't think that I should be more active in disposing of the matters before me than simply dismissing the case.

Mr. Delancy.

MR. DELANCY: Yes, your Honor. When you say all pending motions, does that include the motion that was not noticed for today, the motion for 9011 sanctions that was filed ---

THE COURT: All pending motions are denied for lack of jurisdiction.

MR. DELANCY: Yes, your Honor.

THE COURT: Anything else that needs to be in that order to clarify things?

(No verbal response.)

THE COURT: All right. Mr. Delancy, please circulate the order to everybody and submit it. If there is a disagreement over the form of order, somebody get in touch with my law clerk and let us know.



Thank you all. We're adjourned.

MR. PUGATCH: Thank you, Judge.

MR. MARKOWITZ: Thank you, your Honor.

(Thereupon, the hearing was concluded.)





c13eb008-741d-4492-9eaf-5144fcd1a0cc

CERTIFICATION

STATE OF FLORIDA :
COUNTY OF MIAMI-DADE :

I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 18th day of April, 2016.

______________________________
CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #FF064003
December 27, 2017

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

APPEAL CASE NO.: 15-14826

PETER ULLRICH, et al.,
Appellants,

v.

LESLIE S. OSBORNE, the
Chapter 7 Trustee,
Appellee.
_____________________________________/

*In re Nica Holdings, Inc.*
U.S. Bankruptcy Court for the Southern
District of Florida
_____________________________________/

**APPELLANT PETER ULLRICH'S MOTION FOR RECONSIDERATION AND/OR CLARIFICATION**

EXHIBIT 2

## CERTIFICATE OF INTERESTED PARTIES

Heller Waldman P.L.

Glen Waldman, Esq.

Eleanor Barnett, Esq.

Jason Gordon, Esq.

Michael A. Azre, Esq.

Kelley Kronenberg, P.A.

Irwin R. Gilbert, Esq.

Sayed Zonaid, Esq.

Bryan James Yarnell, Esq.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. Drew

Michael Dillworth, Esq.

Kristopher E. Pearson, Esq.

Nica Holdings, Inc.

Biotec Holdings, A.S.

Peter Ullrich

Leslie Osborne, Esq.

Kenneth A. Welt, Assignee

Adrien C. Delancy, Esq.

Jerry M Markowitz, Esq.

Grace E. Robson, Esq.

Markowitz Ringel Trusty & Hartog, P.A.

Squire Patton Boggs LLP f/k/a Squire Sanders & Dempsey (US) LLP

Anthony J. Carriuolo, Esq.

Paul Singerman, Esq. Berger Singerman LLP

Tina Talarchyk, Esq.

Michael R. Josephs, Esq.

The Josephs Law Firm

David C. Cimo, Esq. (from adverse case in the bankruptcy case)

Genovese Joblove & Battista, P.A.

Adeline M. Haymes

Alan E. Oestreich

Alan Lambert

Alexander Haralambides

Alexander K. Flipse

Alexander Tobin

Alice Safier

Alois J Gorlewski

Anchor, LLC

Andrew Russell Kruppa, Esq.

Andrew S. Lubanski

Angela Robertelli

Anthony L Cuva

Antonio Kozak

Arnold Orlen

Audrey Paulus

Barry J Sullivan

Ben D. Seltmann

Benton R. Simons

Beverley Merzel

Biotec Holdings, A.S.

Brian D. Thorp

Broward County Records, Taxes & Treas.

Bruce B. Phelps

Brunhilda R. Knapp

CEDE & Co.

Chester E Gerlach

Christine L Goodwine

Craig Wierda Grantor

Curtis Ide

Cynthia Boorady

Dana A. Green

Daniel T Hasbrook

David & Laura Perry

David F. Lauz

David Gold

Delaware Division of Revenue

Dennis Hill

Diana C. Flipse

Diana Flipse

Dominic Caramango

Donald K. Resshey

Donald L. Spurling

Donald Palermo

Donn F Flipse

Donn F. Flipse, Trustee for Trust FBO Alexander Flipse

Donn F. Flipse, Trustee, Trust FBO Ellen Flipse

Donn K Flipse

Douglas F. Golder

Dovid Sukenik

Eddie E White

Edmund Pikuzinski

Edward Huttleston

Edward W. Jacobs

Edwin M. Good

Eitsa C. Petsos

Elizabeth Thaler

Ellen Flipse

Eugene Dziecluchowski

FMCNA Defined Benefit Pension

Federick Boorady

Florida Department of Revenue

Francis Bischoping

Fred C & Helen Donn Flipse 1989 Irrev Trust

Fred C. & Helen Donn Flipse f/b/o Alexander Flipse

Fred C. & Helen Donn Flipse f/b/o Ellen Flipse

Freda Rosenberg

Frederick Kich

Gaetano Rizzo

Garry H Donna

Gary E. Dewel

Gary Loff

Gerald J. Weit

Gerald W. Everhart

Gordon and Edna Baines

Grace Placide

Greg Bego

Harold F. Murphy

Harold Parrish

Helen Conte

Helen P. Reilly

Horace Metz

Howard K. Reiss

IRA Dept

IRS

Ida B. Tahrom

Invest Linc Capital Group

Ira J. Melzer

Irby Investments, LLC

Isobel Neuberger

J. Roder Hoffman

Jack D. Rutherford

James Blakely

James D. Salvatore

James Hernandez

James Leone

James P. Flanagan

James P. Purdue

James White

Jan Czajowski

Jeannie Lay

Jerome Schlanser

Jerry Komisar

Jessica Diamond

Joe & Mickey Harris Rehwinkle

John Buscaglia

John Derimiggio

John Dymon

John Hocevar

John Hovecar

John S Goldey

John Stefko

John Vogel

John Burgio

Josef Sukenik

Joseph Cifelli

Joseph Colavecchi

Joseph Dicarlo C/F Joseph Dicarlo

Joseph Dudkowski

Joseph Gattelaro

Joseph I. Czop

Joseph Zdybowicz

Kathleen C. Moore

Kell Alterrman & Runstein

Kenneth Christian

Kirk Funkhouser

Knot Hours, LLC

Kurt Bartz

Leland C. Wolf

Lillian Seostrom

Linda R. Levine

Louis G. Mazzo

Louis Micsinay, Jr.

Linda R. Levine

Louis G. Mazzo

Louis Micsinay, Jr.

Marcia Hochberg

Margaret S. Kuhn

Marilyn Boorady

Mark Boorady

Marsha Harbaugh

Mary Lenardo

Mary Louise Crippen

Matthew Vinci

McKean County Animal Hospital

Miami Dade County Tax Collector

Michael & Valorie Hochberg

Michael Daniel McGinley

Michael Diamond

Michael E. Dowell

Michael Gamboain

Michael Halloway

Michael L. Chrapla

Michael W. Schulte

Michal Ester Diamond

Morris Diamond

National Securities Corp.

Neil Rojek

Nora Machado De Vogel

Norman V. Spector

Norraine Voegtle

Northern Trust, NA

O. Robert Roosen

Office of the US Trustee

Olga Mandeville

Paul A. Widmayer

Paul Gelewski

Peter Boorady

Peter Bozinovich

Peter Young

Phillip J. Marsh

Polo N. Sarno

Prudential Securities Inc.

Richard Sarafan, Esq.

Rachelle Sukenik

Ralph Gesauldo

Randolph P. Zickl

Raymond Brown

Raymond Franchell

Regis Kraisinger

Richard E. Marshall

Richard Gurbst, Esq.

Richard Lane

Richard Lewis

Richard Manuce

Richard Phillips

Richard R. Jenczka

Richard Snopkowski

Richard Sofranko

Richard Voll

Robert B. Reeves

Robert C. Dye

Robert C Roosen Trust UA DTD

Robert E. McClenathan

Robert G. Spencer

Robert Heckman

Robert Iseman, Esq.

Roland R. Orbaker

Ruth Caccard

Ruth Hamburg

Salvatore Burgio

Salvatore Matroniano

Samuel M. Petranto

Sandra Ashton

Shira Sukenik

Shirley Diamond

Shraga Sukenik

Sophia T. Lettau

Southward Investment

Stella Toper

Stephen D. Perry

Stephen J. Rier S

teven Chapman

Steven Goldin

The Vechery Trust

Thomas Badger

Thomas Bodenberg

Thomas Henck

Thomas McLaughlin

Thomas Todd

Timothy F. Quirk

Timothy J. Wightman Trust

Tramdot Development

Troy Wiseman

Trust u/a/w Helen D. Flipse

US Clearing Corp

Valentine Scholl

Victor F. Schroeder

Vincent Minucci

Walter Hoffman

Walter J. Przepansniak

Walter Rozewicz

Warner Strong

Warren King

Wayne Hoover

William B. Landsman

William J. Ivanic

William Jackman

Witold M. Napiorkowski

World Orphans

Zygmunt Jablonski

Judge John K. Olson, US Bankruptcy Court

United States District Judge Joan A. Lenard

United States District Judge Kenneth A. Marra

## APPELLANT PETER ULLRICH'S MOTION FOR RECONSIDERATION AND/OR CLARIFICATION

Appellant, Peter Ullrich ("Ullrich" or "Appellant"), moves this Court to reconsider[1] and/or clarify its Order of Dismissal in the instant appeal, and in support thereof, states:

## BACKGROUND

1. In *In re Nica, Holdings, Inc.*, 810 F.3d 781, 791 (11th Cir. 2015), this Court held that Kenneth Welt was unauthorized to file a bankruptcy case for Nica Holdings, Inc. ("Nica"). In reversing and remanding with instructions to dismiss the bankruptcy, this Court found:

> Nica deliberately selected an ABC as its preferred mode of liquidation and executed an agreement manifesting that intent, consistent with Florida law. It trusted Mr. Welt to "faithfully and without delay carry out her or his duties under the assignment." Fla. Stat. § 727.104(b); Doc. 20–2:3. He didn't do that. Instead, when trouble started, he terminated the ABC by purporting to send Nica into bankruptcy. Mr. Welt had no such authority.

*Id*. Addressing the settlements consummated during the course of the unauthorized bankruptcy, this Court further observed:

> While the settlement payments are easily reversible, somewhat more difficulty may arise from the dismissals with prejudice of the Adversary Proceeding and the

[1] Appellant does not suggest error in this Court's Order of Dismissal. Appellant asks the Court to modify its Order to establish the full consequence of the ruling, i.e., that all the orders entered by the Bankruptcy Court are void *ab initio* and the parties are to be returned to the *status quo ante*.

> Malpractice Claim, on which the statute of limitations has apparently run. However, because we conclude in Part III.B, *infra,* that the ABC assignee lacked authority to initiate this bankruptcy in the first place, such difficulties should be mitigated. The state dismissals were based on orders from an unauthorized bankruptcy, and the limitation period expired during this bankruptcy. In these circumstances, the claimants may well be able to revive their suits by operation of equitable tolling. *See Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir.1999) (per curiam) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.").

*Id*. at n. 8.

2. Subsequently, on April 27, 2016, this Court dismissed the instant appeal as moot and made clear:

> But because we held in Ullrich that the bankruptcy court lacked jurisdiction over the bankruptcy, see id. at 788-91, the challenged bankruptcy court order is void. See Truett v. Johns-Manville Sales Corp., 725 F.2d 1301, 1302 (11th Cir. 1984) (per curiam) (where district court lacked jurisdiction to grant a motion, its order doing so was "void ab initio").

*See* Order of Dismissal at Exhibit A. The challenged Bankruptcy Court Order in the second appeal approved a settlement of a multi-million dollar legal malpractice case for a mere $210,000. This was one of two settlements entered into by the Bankruptcy Trustee with bankruptcy court approval. The earlier settlement Order purported to resolve Ullrich's multi-million dollar lawsuit against Welt for a mere $50,000. Notably, this Court did not state explicitly that all the Bankruptcy Court's orders were void *ab initio* and that the parties should be returned to the *status quo ante.*

3. On May 9, 2016, the Bankruptcy Court held a hearing as a result of the mandate issued by this Court in the First Nica Appeal, and expressed uncertainty as to the scope of its mandate. The Bankruptcy Judge stated that because this Court did not instruct him to void the respective settlement orders and did not tell him to return the parties to the *status quo ante*, he believed he had *no authority* to act beyond ordering the dismissal of the unauthorized bankruptcy.[2] A copy of the May 9, 2016, Hearing Transcript will be filed separately.

4. Ullrich asked the Bankruptcy Court to void all of the orders previously entered and direct the Trustee to return the settlement payments to the settling parties, Welt and Squire Patton Boggs (US) LLP f/k/a Squire Sanders (US) LLP ("Squire Sanders"). Of course this is naturally part of the process of returning the parties to the *status quo ante*.[3]

5. The Bankruptcy Court's position on remand does not effectuate a return of the parties, including Ullrich, to their respective positions before the bankruptcy

[2] Prior to the May 9, 2016, Ullrich renewed his original motion to dismiss the bankruptcy, first filed on October 8, 2012, and moved to vacate the orders approving the settlements reached in the unauthorized bankruptcy and undo the same.

[3] A complication was revealed when it was learned that the Trustee had spent some of the money that should be returned to the settling parties. Ullrich argued that $210,000 should be returned to Squire Sanders as repayment in full and that the remaining sum held by the Trustee be paid to Welt—but also asked the Bankruptcy Court to exercise its equitable power to rule that Welt must bear any loss because Welt was at fault for filing an unauthorized bankruptcy case. All these pleas were rejected.

court ruled on Ullrich's "authority-to-file challenge," which was filed with the Bankruptcy Court on October 8, 2012, and before the contested settlements were reached in the bankruptcy. *See In re Nica, Holdings, Inc.*, 810 F.3d at 789:

> "Rather than dismissing the case for lack of subject matter jurisdiction based on an authority-to-file challenge, these courts rightly assumed jurisdiction in order to address the challenge. The Bankruptcy Court here was not wrong to do the same. *Its ruling once it got to the merits, however, was wrong.*" (italics supplied).

6. Instead of ordering the settlement payments back to the settling parties, the Bankruptcy Court ordered that the funds are to be given to Welt's attorneys to hold in trust pursuant to 11 U.S. Code § 349(b)(3)[4] until *another court* adjudicates how these payments are to be disbursed.

7. It seems that this Court intended the Bankruptcy Court to reverse the settlements and return the payments to the settling defendants:

> While the settlement payments are easily reversible, somewhat more difficulty may arise from the dismissals with prejudice of the Adversary Proceeding and the Malpractice Claim, on which the statute of limitations has apparently run. However, because we conclude in Part III.B, *infra,* that the ABC assignee lacked authority to

[4] Section 349(b)(3) provides that upon dismissal, the property of the bankruptcy estate revests "in the entity in which such property was vested immediately before the commencement of the case under this title." The problem is that this property—the settlement proceeds—was not the property of the Assignee in the ABC case before the bankruptcy case was filed. Ullrich's lawsuit against the Assignee would not have produced funds for the benefit of the ABC estate, it would inure to the benefit of Ullrich.

> initiate this bankruptcy in the first place, such difficulties should be mitigated.

*See In re Nica, Holdings, Inc.*, 810 F.3d at n. 8. Who other than the Court that authorized the payments would have the power to order the payments reversed?

8. Ullrich respectfully requests that this Court modify its Order and include the following: (1) all of the orders entered by the Bankruptcy Court are void *ab initio*; (2) the parties, including Ullrich, are to be restored to the *status quo* ante, including reversing the settlement payments; (3) the prior remand of this Court authorized the Bankruptcy Court to enter orders consistent with this Court's decisions; and (4) the Bankruptcy Court retained post dismissal equity powers to assess costs against Welt for sums expended by the Trustee.

## ARGUMENT

9. Without further clarification as to the parameters of the Bankruptcy Court's authority on remand, the parties it seems will continue to be ensnared by actions—namely the settlements entered into by the Trustee with Welt and Squire Sanders insulating the latter two from claims arising from the ABC—taken in the course of a bankruptcy this Court previously held was unauthorized. In essence, the bankruptcy court's cautioned reading of this Court's mandate in the First Nica Appeal perpetuates the inequities that gave rise to the First Nica Appeal and to the instant appeal. Additionally, this position contradicts the Court's Order in the instant appeal.

10. Given the questionable events that transpired in the lengthy course of the Nica bankruptcy, mere dismissal of the unauthorized bankruptcy, without any indication that orders entered therein are vacated as void *ab intio* and the reversal of settlement payments, does not restore the parties to the *status quo ante*.[5]

11. The Bankruptcy Court should be provided with clarification and/or additional directions to ensure that the bankruptcy is equitably concluded so as to return the parties to the positions they would have rightly occupied but for Welt's improper filing. *See Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir.1985) (holding that a "[a] void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside") (internal quotes deleted); *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (stating that where an order is void, the court "must, if requested, undo the effect of that order and restore the parties to the *status quo ante*") (citations omitted); *In re Steffen*, 418 B.R. 428, 431 (Bankr. M.D. Fla. 2008) (holding on remand that it is a "well established legal principle that when a Federal Court enters an order that it was without subject matter jurisdiction to enter, the Court must vacate that order") (citations omitted); *see also*

[5] Here, pursuant to the Bankruptcy Court's application of 11 U.S. Code § 349(b)(3), the settlements payments are to remain with Welt's lawyers until further adjudication—presumably in the ABC proceeding in Miami-Dade County, which was previously dismissed. However, seeing as the ABC played *no role* in obtaining these settlements and the fact that the ABC estate did not enter into the instant unauthorized bankruptcy with these assets, it is rather confounding as to why these assets are to be distributed to Welt's lawyers.

*In re Whitney Place Partners*, 123 B.R. 117, 122 (Bankr. N.D. Ga. 1992) (stating that dismissal of a case does not deprive a bankruptcy "of jurisdiction to hear a motion for Bankruptcy Rule 9011 sanctions"); *In re Zaragosa Properties, Inc.*, 156 B.R. 310, 314 (Bankr. M.D. Fla. 1993) (holding that the filing of bankruptcy *without authority to do* is sanctionable under Bankruptcy Rule 9011).

WHEREFORE, the Ullrich respectfully requests that this Court reconsider the provisions of its Order dismissing the instant appeal as moot by making clear that (1) all the orders in the bankruptcy case are void *ab inito* and (2) that the earlier mandate was intended to provide the Bankruptcy Court with jurisdiction to reverse the settlements and restore the parties to the *status quo ante*.

**CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL**

I certify that Counsel for Appellant Ullrich distributed a draft of this Motion to all counsel of record via e-mail. I further certify that Counsel for the Appellant telephoned the Attorneys for Appellee Leslie Osborne, the Bankruptcy Trustee, as well as the Attorneys for Kenneth Welt, Adrian Delancy, Esq., and Chad Pugatch, Esq., and that the respective attorneys, with the exception of the Attorneys for the Trustee, indicated that they do not agree to relief sought herein. Counsel for Trustee Leslie Osborne has yet to respond to Appellant. Counsel for Appellant will advise the Court of the Trustee's position via an Amended Certificate of Conference once he has responded.

Respectfully Submitted,

KELLY KRONENBERG, P.A.
Counsel for Appellant
1475 Centrepark Boulevard, Suite 275
West Palm Beach, Florida 33401
Telephone: (561) 684-5956
Fax: (561) 684-5753
igilbert@kelleykronenberg.com

By: *_/s/ Irwin Gilbert_*
IRWIN R. GILBERT, ESQ.
Fla. Bar No.: 099473

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

By: *_/s/ Irwin Gilbert_*
IRWIN R. GILBERT, ESQ.
Fla. Bar No.: 099473

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 27(d); 32(a)

1. The instant motion complies with the page volume limitation of Fed. R. App. P. 27(d)(2) because it does not exceed 20 pages.

2. As the instant motion has been prepared in a proportionally spaced typeface in 14 point Times New Roman font, it complies with the formatting requirements of Fed. R. App. 32(a)(5) and (a)(6).

By: *<u>/s/ Irwin Gilbert</u>*
IRWIN R. GILBERT, ESQ.
Fla. Bar No.: 099473

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 27, 2016

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 15-14826-BB
Case Style: Peter Ullrich, et al v. Leslie Osborne
District Court Docket No: 0:14-cv-62758-JAL
Secondary Case Number: 0:12-bkc-32686-JKO

The enclosed copy of this Court's Order of Dismissal is issued as the mandate of this court. See 11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order. No additional time shall be allowed for mailing."

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Carol R. Lewis, BB/lt
Phone #: (404) 335-6179

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

EXHIBIT A

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 15-14826
Non-Argument Calendar

---

D.C. Docket No. 0:14-cv-62758-JAL

IN RE: NICA HOLDINGS, INC.,

Debtor.

---

PETER ULLRICH,
BIOTEC HOLDINGS A.S.,

Plaintiffs-Appellants,

versus

LESLIE S. OSBORNE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Florida

---

Before MARCUS, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

This appeal is associated with case number 14-14685, which we recently

disposed of in Ullrich v. Welt (In re Nica Holdings, Inc.), 810 F.3d 781 (11th Cir. 2015). In this appeal, two major creditors in the Nica Holdings, Inc. bankruptcy challenge the district court's dismissal of their appeal of a bankruptcy court order authorizing a settlement agreement. But because we held in Ullrich that the bankruptcy court lacked jurisdiction over the bankruptcy, see id. at 788–91, the challenged bankruptcy court order is void. See Truett v. Johns-Manville Sales Corp., 725 F.2d 1301, 1302 (11th Cir. 1984) (per curiam) (where district court lacked jurisdiction to grant a motion, its order doing so was "void ab initio"). The parties agree that this appeal should now be dismissed as moot. Accordingly, this appeal is dismissed.

**APPEAL DISMISSED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 27, 2016

Irwin R. Gilbert
Kelley Kronenberg
1475 CENTREPARK BLVD STE 275
W PALM BEACH, FL 33401

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 15-14826-BB
Case Style: Peter Ullrich, et al v. Leslie Osborne
District Court Docket No: 0:14-cv-62758-JAL
Secondary Case Number: 0:12-bkc-32686-JKO

The enclosed copy of this Court's Order of Dismissal is issued as the mandate of this court. See 11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order. No additional time shall be allowed for mailing."

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Carol R. Lewis, BB
Phone #: (404) 335-6179

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

EXHIBIT 3

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

CORRECTED

---

No. 15-14826-BB

---

IN RE: NICA HOLDINGS, INC.,

Debtor.

---

PETER ULLRICH,
BIOTEC HOLDINGS A.S.,

Plaintiffs-Appellants,

versus

LESLIE S. OSBORNE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Florida

---

Before MARCUS, WILSON and MARTIN, Circuit Judges.

BY THE COURT:

Appellant's motion for clarification of our April 27, 2016 order dismissing the current appeal as moot is GRANTED. The April 27, 2016 order is VACATED and replaced by the following:

This appeal is associated with case number 14-14685, which was resolved by an order of our court in Ullrich v. Welt (In re Nica Holdings, Inc.), 810 F.3d 781 (11th Cir. 2015). Now in this appeal, two major creditors in the Nica Holdings, Inc. bankruptcy challenge the district court's dismissal of their appeal of a bankruptcy court order authorizing a settlement agreement. In Ullrich, 14-14685, we held that the bankruptcy court lacked jurisdiction over the bankruptcy case, so the settlements it authorized were due to be reversed in accordance with our opinion. See id. at 788–91, 788 n.8. Thus, the bankruptcy court's orders authorizing the settlements are void. See Truett v. Johns-Manville Sales Corp., 725 F.2d 1301, 1302 (11th Cir. 1984) (per curiam) (where district court lacked jurisdiction to grant a motion, its order doing so was "void ab initio"). The parties agree that this appeal should now be dismissed as moot, and by this order, it is.

**APPEAL DISMISSED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 27, 2016

Irwin R. Gilbert
Kelley Kronenberg
1475 CENTREPARK BLVD STE 275
W PALM BEACH, FL 33401

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 15-14826-BB
Case Style: Peter Ullrich, et al v. Leslie Osborne
District Court Docket No: 0:14-cv-62758-JAL
Secondary Case Number: 0:12-bkc-32686-JKO

The enclosed copy of this Court's Corrected Order of Dismissal is issued as the mandate of this court. See 11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order. No additional time shall be allowed for mailing."

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Carol R. Lewis, BB
Phone #: (404) 335-6179

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

PETER ULLRICH, CASE NO. 062011CA31923A CE

Plaintiff,

v.

KENNETH A. WELT,

Defendant.
_____________________________/

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REOPEN CASE**

Defendant, Kenneth A. Welt ("Welt" or "Defendant"), by undersigned counsel, hereby responds in opposition to the motion filed by Plaintiff, Peter Ullrich ("Ullrich" or "Plaintiff"), to reopen this case, and in support thereof states as follows:

**BACKGROUND**

1. This case was originally commenced by Ullrich against Welt on December 22, 2011 arising out of certain alleged acts and omissions of Welt during his tenure as assignee for the benefit of creditors of Nica Holdings, Inc. ("Nica" or "Assignor").[1]

2. Nica commenced an assignment for the benefit of creditors case on July 12, 2007 in Miami-Dade County Circuit Court, Case Number 07-21946-CA-11 (the "ABC Case"). The corporate secretary and director of Nica executed an assignment for the benefit of creditors agreement (the "ABC Agreement") in favor of Welt pursuant to, and tracking the language of, Chapter 727, Florida Statutes.

3. In the years that followed the execution of the ABC Agreement, various difficulties arose impairing the ability of Welt to effectively administer the ABC Case, including,

[1] Welt will refrain from responding to the inaccurate and false factual statements made by Ullrich regarding this case and the bankruptcy case, which are unnecessary to a disposition of Ullrich's motion.

EXHIBIT 4

but not limited to, infighting and litigation (both domestically and in Nicaragua) between the two largest creditors of the ABC Case against one another, one of which was Ullrich.

4. As a result of the numerous and continuous obstacles presented to the ABC Case over several years of attempted administration (which are too numerous to set forth in detail here), Welt determined in his business judgment that it would be in the best interests of the creditors of Nica, and the ABC estate as a whole, to place Nica into bankruptcy and liquidate Nica's assets through the more traditional and established methods of a Chapter 7 bankruptcy proceeding.

5. Accordingly, on September 24, 2012, relying on the general power of attorney granted to him in the ABC Agreement, and on the legal precedent of an Opinion and Order entered by the United States Bankruptcy Court (Honorable Raymond B. Ray) in the case of *In re Maxim Enterprises, Inc.*, 07-20300-RBR (Bankr. S.D. Fla.), Welt filed a voluntary bankruptcy petition on behalf of Nica, Case Number 12-32686-JKO (the "Bankruptcy Case").[2]

6. In *Maxim*, an assignor entered into an assignment for the benefit of creditors contract with an assignee. After the assignment agreement had been entered into, the assignee filed a voluntary petition, placing the assignor entity into a Chapter 7 bankruptcy proceeding. A creditor filed a motion to dismiss the case arguing that "the Chapter 7 Petition is defective because it did not include a corporate resolution" authorizing the filing of the bankruptcy petition. *See Maxim*, Bankruptcy Case, ECF No. 25, Exhibit A at pg. 3. In considering the creditor's motion to dismiss, the *Maxim* Court analyzed the issue of whether an assignee possessed the power under Florida law to place an assignor into bankruptcy relying solely on the general power of attorney language set forth in the ABC statute and incorporated in the parties'

[2] "State courts often look to federal bankruptcy law for guidance as to legal issues arising in proceedings involving assignments for the benefit of creditors." *Moecker v. Antoine*, 845 So. 2d 904, 911 fn. 10 (1st DCA 2003).

assignment contract. The *Maxim* Court held that an assignee could indeed file for bankruptcy on behalf of an assignor under the general power of attorney language set forth in the ABC statute and incorporated in the assignment agreement.[3]

7. Ultimately, on December 17, 2015, the Eleventh Circuit, in *In re Nica Holdings, Inc.*, 810 F. 3d 781 (11th Cir. 2015), disagreed with the Bankruptcy Court and the District Court by holding that the general power of attorney language contained in the ABC Agreement (and in the Florida assignment statute) is sufficient, without more, to authorize assignees to put assignor entities into bankruptcy.[4]

8. During the pendency of Nica's Bankruptcy Case, this case was removed to the Bankruptcy Court as an adversary proceeding styled *Ullrich v. Welt*, Adversary Proceeding Number 12-02242-JKO (the "Adversary Proceeding").

9. The Chapter 7 trustee of Nica, Les Osborne, settled the Adversary Proceeding and thereafter the Adversary Proceeding was dismissed with prejudice. The Order Dismissing Adversary Proceeding dated December 19, 2013 is attached hereto as Exhibit A.

10. As the Eleventh Circuit correctly noted, Ullrich never sought a stay of the settlement of the Adversary Proceeding.[5] Moreover, as the Eleventh Circuit further recognized, Ullrich failed to seek a stay of the order dismissing the Adversary Proceeding with prejudice.

11. Ullrich also never filed an appeal of the order dismissing the Adversary Proceeding with prejudice.

---

[3] Subsequent to the Nica bankruptcy filing, three separate federal judges (the Honorable John K. Olson, the Honorable Joan Lenard and the Honorable Kenneth Marra) ratified Welt's ability and capacity to initiate bankruptcy proceedings for Nica pursuant to the general power of attorney contained in the ABC Agreement.

[4] Welt was not a party to the adversary proceeding of *Ullrich v. Osborne* and the basis for the Eleventh Circuit unpublished decision was that the appeal was moot. Anything else set forth therein is dicta.

[5] In contrast, Ullrich did seek a stay of a settlement of the malpractice action initiated against the law firm that represented Welt, as assignee for the benefit of creditors of Nica.

## ARGUMENT

12. No basis exists to reopen a case that was dismissed with prejudice. This case was resolved and Ullrich neither appealed nor sought a stay of the dismissal of this action with prejudice. Ullrich cannot reopen a case that was dismissed with prejudice.[6]

13. To the extent Ullrich is actually seeking redress from the order dismissing this case with prejudice, no independent proceeding has been filed and, accordingly, such relief is not before this Court. Moreover, and in any event, any such relief would not be available.

14. The Eleventh Circuit opinion recognized that the case against Welt was dismissed and would need to be reinstituted (rather than reopened) and that the statute of limitations for Ullrich's claims against would have expired, *see* Fla.Stat §95.11, but that perhaps Ullrich might be able to revive the case by equitable estoppel. It set forth as follows:

> The state dismissals were based on orders from an unauthorized bankruptcy, and the limitation period expired during this bankruptcy. In these circumstances, the claimants **may** well be able to revive their suits by operation of equitable tolling. See Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.").

*In re Nica Holdings, Inc.*, 810 F. 3d at 788 n. 8.

---

[6] The state court action no longer exists as it was resolved during the pendency of the Bankruptcy Case and dismissed with prejudice. There is no proceeding left to reinstate. 11 U.S.C. §349(b)(1)(A) is not implicated here because this case was not a "proceeding or custodianship superseded under section 543 of this title [11 U.S.C. § 543]." The Bankruptcy Court has not vacated the settlement or order of dismissal with prejudice and 11 U.S.C. §349(b)(2) by its terms only "vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550 or 553 of this title"-none of which sections are implicated in this case. *See, e.g., Montgomery v. Pope Montgomery Architects & Builders LLC* (*In re Montgomery*), 200 Fed. Appx. 320 (5th Cir. 2006) ("Montgomery concedes that section 349 states that a dismissal vacates certain judgments but does not list section 523. See 11 U.S.C. 349(b)(2). The dismissal of the earlier bankruptcy therefore has no effect on the default judgment entered. Thus, Montgomery's argument that section 349 affects a judgment under section 523(a) fails"); *In re Jemps, Inc.*, 330 B.R. 258, 261 (Bankr. D. Wy. 2005)("The purpose of § 349 is to restore the rights of the parties as they existed when the petition was filed…The application of the section is quite narrow….The proceedings and transfers which are reinstated and the orders which are vacated upon dismissal are explicitly addressed in § 349, and generally deal with lien and transfer avoidance. A claim allowance order and an order allowing attorney fees under § 506 (b) are not among those orders enumerated") (internal citations omitted).

15. However, tolling in Florida is only available if the basis for the relief is one of the provisions set forth in Fla. Stat. § 95.051. *See, e.g, HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So.2d 1094, 1098 (Fla. 2d DCA 2004), *review denied*, 904 So.2d 430 (Fla. 2005).[7] As none of the provisions of § 95.051(1) (a) –(i) are applicable here, Ullrich is not entitled to tolling of the statute of limitations. *Id.* Fla. Stat. § 95.051(2) expressly precludes tolling on any other basis. *Id.*;*See* Fla. Stat. § 95.051(2).

16. Additionally, it has been held that "[e]quitable tolling is unavailable outside of the administrative context…." *See, e.g., Loez v. Geico Cas. Co.*, 968 F.Supp. 2d 1202, 1206 (S.D.

---

[7] 95.051 When limitations tolled.—
(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
(a) Absence from the state of the person to be sued.

(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.

(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.

(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.

(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.

(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.

(h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.

(i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

Paragraphs (a)-(c) shall not apply if service of process or service by publication can be made in a manner sufficient to confer jurisdiction to grant the relief sought. This section shall not be construed to limit the ability of any person to initiate an action within 30 days after the lifting of an automatic stay issued in a bankruptcy action as is provided in 11 U.S.C. s. 108(c).

(2) A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.

Fla. 2013) *citing HCA Health*, 906 So.2d at 1098; *see also, e.g., Baez v. Root*, 2014 U.S. Dist. LEXIS 50448 (S.D. Fla. 2014); *Watson v. Paul Revere Life Ins. Co.*, 2011 U.S. Dist. LEXIS 122307 (S.D. Fla. 2011); *Socas v. Northwestern Mut. Life Ins. Co.*, 829 F. Supp. 2d 1262 (S.D .Fla.2011) ("[I]n Florida, the application of equitable tolling is limited to administrative proceedings."); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 U.S. Dist. LEXIS 33974, (M.D. Fla.2010) ("Equitable tolling ... is not available in civil actions in Florida"); *but see Carroll v. TheStreet.com, Inc.*, 2014 U.S. Dist. LEXIS 156499 (S.D. Fla. 2014).

17. Furthermore, even assuming equitable tolling were otherwise permitted in Florida, the failure of Ullrich's attorneys to seek to stay the order of dismissal with prejudice would preclude the availability of equitable tolling since "attorney negligence is not a basis for the extraordinary remedy of equitable tolling[.]" *Howell v. Crosby*, 415 F.3d 1250, 1252 (11th Cir. 2005).

WHEREFORE, Welt respectfully requests that this Court deny Ullrich's motion and that Welt be granted such other and further relief as this Court deems just and proper.

**RICE PUGATCH ROBINSON STORFER & COHEN, PLLC**
*Attorneys for Defendant*
101 Northeast Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone (954) 462-8000
Facsimile (954) 462-4300

By: /s/ Chad P. Pugatch
CHAD P. PUGATCH
Florida Bar No. 220582
cpugatch@rprslaw.com
RONALD J. LEWITTES
Florida Bar No. 052840
rlewittes@rprslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by Email to all parties listed below this 6th day of July, 2016.

/s/ Chad P. Pugatch
CHAD P. PUGATCH

## SERVICE LIST

**VIA EMAIL**

Irwin R. Gilbert, Esq.
Sayed M. Zonaid, Esq.
Kelley Kronenberg
1475 Centrepark Boulevard, Suite 275
West Palm Beach, Florida 33401
Email: igilbert@kelleykronenberg.com
Email: irgeservice@kelleykronenberg.com

Adrian Delancy, Esq.
Markowitz Ringel Trusty & Hartog, P.A.
9130 South Dadeland Boulevard, Suite 1800
Miami, Florida 33156
Email: adelancy@mrthlaw.com

J:\WPDocs\4969 Welt v Ulrich\pleadings\Defendant's Response in Opposition to Plaintiff's Motion to Reopen Case v3.docx

# Exhibit A

**ORDERED in the Southern District of Florida on December 19, 2013.**

John K. Olson, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re: Case No. 12-32686-JKO

NICA HOLDINGS, INC., Chapter 7

Debtor.
_______________________________/ Adv. Proc. No. 12-02242-JKO

LESLIE S. OSBORNE, solely as Chapter 7 Trustee for the bankruptcy estate of Nica Holdings, Inc.

Plantiff,

v.

KENNETH A. WELT,

Defendant.
________________________________/

**ORDER DISMISSING ADVERSARY PROCEEDING**

Case 12-02242-JKO Doc 52 Filed 12/19/13 Page 2 of 2



THIS MATTER came before the Court for hearing on December 18, 2013 at 10:30 a.m. ("Hearing") upon the Court scheduled Status Conference [ECF No. 50].

For the reasons stated on the record at the Hearing, which are incorporated herein, it is –

**ORDERED** as follows:

1. This adversary proceeding is **DISMISSED** with prejudice.

# # #

**Submitted by:**

Kristopher E. Pearson, Esq.
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200,
Miami, Florida 33130
kpearson@stearnsweaver.com
*Counsel for Trustee Osborne*

(Attorney Pearson is directed to serve a conformed copy of this Order upon all interested parties, and file a Certificate of Service with the Court)